541 A.2d 1314

**Maureen NEAL**

v.

**Ruth FISHER.**

**No. 65, Sept. Term, 1987.**

Court of Appeals of Maryland.

June 9, 1988.

686

Robert M. McCaig (Marian McKennan and Legal Aid Bureau, Inc., on the brief), Centreville, for appellant.

David C. Wright of Wright & Heimbach, Chestertown (Jerome James LaCorte, Denton, on the brief), for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

This case presents two questions under the 1975 Rent Escrow Act (the Act)—Md.Code (1988 Repl.Vol.), § 8–211 of the Real Property Article:[1]

---

1. Unless otherwise noted, all statutory references are to the Real Property Article.

1. Does the District Court have jurisdiction (under § 8–211(n)(5)) to order payment of the rent escrow fund to the tenant, if the tenant has failed to request a hearing for that purpose?

2. May a court order payment of the escrow fund to the landlady (under § 8–211(n)(6)) if the tenant has failed to pay rent into the fund after the District Court has ordered the fund paid to the tenant?

We shall answer the first question in the affirmative and the second in the negative, thus reversing the judgment of the Circuit Court for Queen Anne's County.

## I. *Background*

We shall discuss additional facts as we review each question presented. For the present, we recite only enough to explain the development of the instant controversy between petitioner Maureen Neal (Tenant) and respondent Ruth Fisher (Landlady).

In 1980 Landlady leased to Tenant a dwelling in Queen Anne's County at a rental which, at times here relevant, was $125 per month. Some time thereafter, Tenant fell through the rotted boards of the porch and injured her leg. Pursuant to § 8–211(g) she gave Landlady written notice of various defects in the dwelling. When Landlady did not make repairs or correct the conditions, Tenant brought a rent escrow action in the District Court in Queen Anne's County pursuant to § 8–211(i).[2] On 3 January 1986 at a

---

**2.** The Act "provides a remedy and imposes an obligation upon landlords to repair and eliminate conditions and defects which constitute, or if not promptly corrected will constitute, a fire hazard or a serious and substantial threat to the life, health, or safety of occupants." Sec. 8–211(e). Among the conditions and defects identified as meeting the requirements of the Act are "[l]ack of ... hot or cold running water" (§ 8–211(e)(1)); "[l]ack of adequate sewage disposal facilities" (§ 8–211(e)(2)); and "[t]he existence of any structural defect which presents a serious and substantial threat to the physical safety of the occupants" (§ 8–211(e)(5)). If a rent escrow action is brought and the court finds that one or more of these (or certain other) conditions exist, the court may, among other things, order "[p]ayment by the tenant, into court, of the amount of rent required by the lease...."

hearing before the Hon. L. Edgar Brown, both Tenant and Landlady testified. Judge Brown, after describing the dwelling as "what I wouldn't put a dog into," made the following findings:

> There's no water, hot, cold or running, that's a statutory defect, there's structural defects involving the front porch and the stairwell, there are obviously no bath facilities, if there's no running water.[3]

He ordered "[r]ent escrow shall be established until these conditions are corrected and if it becomes apparent that they cannot be corrected, then either party can petition the Court to have another hearing on the disbursement of the funds."

Tenant faithfully paid her rent into escrow. In July 1986, after a further hearing in the District Court, the Hon. John T. Clark, III, invoked § 8–211(n)(5) and ordered the $1,000 that had then accumulated in the rent escrow account to be paid to Tenant. Landlady appealed.[4] Certain events that occurred during that appeal are the subject of this case and will be reviewed in detail below. The upshot of the appeal, however, was that the Circuit Court for Queen Anne's County (Clayton C. Carter, J.) ordered payment of the escrow fund to Landlady. The order was stayed pending the filing of a petition for certiorari to this Court pursuant to Md.Code (1984 Repl.Vol., 1987 Cum.Supp.), § 12–305 of the Courts and Judicial Proceedings Article. We granted it. 310 Md. 144, 527 A.2d 331 (1987).

## II. *District Court Jurisdiction Under § 8–211(n)(5)*

We move back in time to 3 January 1986, when Judge Brown established the rent escrow. As we have said,

---

Sec. 8–211(k)(2). The disposition of the rent escrow fund thereafter is governed by § 8–211(n), of which more later.

**3.** Judge Brown also entered a written order to the same effect.

**4.** The appeal was de novo because the amount in controversy in this civil case did not exceed $1,000, exclusive of interest and costs. Md.Code (1984 Repl.Vol.), § 12–401(d) of the Cts. & Jud.Proc. Art. *See Barbee v. Barbee,* 311 Md. 620, 622–624, 537 A.2d 224, 225 (1988).

Tenant thereafter paid her monthly rent into the fund. In April the District Court, *sua sponte*, sent notice to Landlady and Tenant that the case was scheduled for hearing. Landlady and Tenant appeared before Judge Clark on 7 May, Tenant represented by counsel (supplied by Legal Aid), Landlady not.

Although nobody testified, there was a lengthy discussion, covering almost 30 pages of transcript, involving actions Landlady had taken since establishment of the escrow, Tenant's proposals for resolving the problems, and Landlady's various options. As to those last, Judge Clark explained them in lengthy and careful detail. He also suggested that Landlady might wish to obtain counsel. With the acquiescence of all concerned, he set another hearing date for July at which the court would further consider the disposition of the fund. One possibility, explicitly pointed out to Landlady, was that if there had been no repairs "or good efforts ... made to repair after six months [from the date of the initial escrow order], the Court can indeed, release the money back to the tenant and find there's a forfeiture...." Landlady said she understood this.

The parties reconvened on 21 July 1986. After hearing testimony Judge Clark made written findings that "the violation(s) and/or condition(s) heretofore complained of have not been corrected or remedied and good faith efforts have not been made to repair the defects...." He ordered the escrow terminated and the fund paid to Tenant.

When Landlady's resulting appeal reached the circuit court, there was a trial de novo at which both parties testified. *See* n. 4, *supra*. At this trial with both parties now represented by counsel, Judge Carter limited the issue to "whether or not Judge Clark properly directed the return of the escrow funds ... back to the tenant...."[5] As to

---

5. At the outset of the hearing, trial counsel for Landlady suggested that the question of whether rent escrow should have been established in the first place also was before the circuit court. Judge Carter ruled the rent escrow order of 3 January 1986 was final and appealable and

that, he held that the District Court had lacked jurisdiction to do so. He relied on the following provision of § 8–211:

(n) After rent escrow has been established, the court:

\* \* \* \* \* \*

(5) May, after a hearing, *if one is requested by the tenant,* order, if no repairs are made or if no good faith effort to repair is made within six months of the initial decision to place money in the escrow account, that the moneys in the escrow account be disbursed to the tenant [emphasis supplied].

In an opinion delivered from the bench, Judge Carter explained: "[T]he Court is satisfied that the district court did not have jurisdiction to employ the provisions of Section 8–211 [ (n)(5) ], directing that monies in the amount of $1,000 . . . should be disbursed to the tenant, because there is nothing in the record to indicate that after six months from the date of the original escrow order . . . the tenant requested a hearing. . . ." In a subsequent memorandum opinion he enlarged upon his earlier reasoning:

[T]his Court found that the tenant had not requested the hearing in the District Court and then ruled that the lower court was without authority under the Real Property Article, § 8–211(n)(5) to order the moneys disbursed to the tenant. This Court held that the statute was in derogation of the common law and must be strictly construed. 20 M.L.E. *Statutes,* § 146. When a statute

---

was not before him because no appeal had been taken from it. The correctness of this ruling is not before us. Md.Rule 813a. Paraphrasing *Clark v. Elza,* 286 Md. 208, 219 n. 4, 406 A.2d 922, 928 n. 4 (1979), the issue "was not encompassed in the petition for a writ of certiorari, was not raised by [Landlady] in a cross-petition for a writ of certiorari, and therefore, cannot be raised for the first time in [her] brief in this Court." *See also Fred W. Allnut, Inc. v. Comm'r, Lab. & Ind.,* 289 Md. 35, 39 n. 2, 421 A.2d 1360, 1362 n. 2 (1980) (grant of certiorari was limited to questions in petition and other issues raised in brief were not properly before the Court); and *Dempsey v. State,* 277 Md. 134, 142, 355 A.2d 455, 459 (1976); *McMorris v. State,* 277 Md. 62, 70 n. 4, 355 A.2d 438, 443 n. 4 (1976); and *Walston v. Sun Cab Co.,* 267 Md. 559, 564–569, 298 A.2d 391, 394–397 (1973) (all discussing the bases of this rule).

authorizes a proceeding which was not allowed previously by the general law and directs the mode in which an act shall be done, the mode pointed out must be strictly pursued, and a strict compliance with the directions of the statute is the condition on which alone a party can entitle himself to the benefit of the statute. *Id.* § 147.

Landlady argues to us that Judge Carter's effective reversal of the District Court can be supported by evidence, produced at the de novo trial, that she had made good faith efforts to repair the defects. If this be so, she contends, the order to disburse to Tenant was incorrect and Judge Carter's result was proper. Putting aside the problem that a finding of good faith efforts to repair would not necessarily compel Judge Carter's ultimate decision to return the escrow money to Landlady (*see* the various options contained in § 8–211(n)), we note that the trial judge made no finding of good faith efforts, nor could he have done so, given the relevant evidence presented.

 Section 8–211(n)(5) speaks of return of the escrow money to the tenant if the landlord has made "no good faith effort to repair ... within six months of the initial decision to place money in the escrow account...." With but one exception, Landlady's testimony about somewhat sporadic "efforts" to repair dealt with things done after 3 July 1986—that is, more than six months, after the initial escrow order. These belated "efforts" were simply irrelevant for purposes of § 8–211(n)(5). The only testimony of anything done before 3 July related to a single meeting with a contractor in June 1986, just before the expiration of the six-month period. This could not have constituted a basis for any finding of good faith efforts to repair. Since Landlady's fact-based argument is without merit, we turn to the trial judge's interpretation of § 8–211(n)(5).

 The judge was, of course, correct in finding that Tenant had not requested a hearing under that paragraph. He also may have been correct in noting that the statute appears to condition the release of money to a tenant on a

hearing requested by the tenant; an argument to that effect certainly can be made. But his conclusion that failure of the tenant to request a hearing deprived the District Court of jurisdiction was unwarranted.

We are dealing here with statutory construction, and our endeavor must be to identify the "objective, goal, or purpose" of the legislative scheme, and to construe the statute in a way that will advance that purpose, not frustrate it. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628, 632 (1987). The General Assembly has told us of the purposes of the Act:

§ 8–211

(a) The purpose of this section is to provide tenants with a mechanism for encouraging the repair of serious and dangerous defects which exist within or as a part of any residential dwelling unit.... The defects sought to be reached by this section are those which present a substantial and serious threat of danger to the life, health and safety of the occupants of the dwelling unit, and not those which merely impair the aesthetic value of the premises, or which are, in those locations governed by such codes, housing code violations of a nondangerous nature....

(b) It is the public policy of Maryland that meaningful sanctions be imposed on those who allow dangerous conditions and defects to exist in leased premises, and that an effective mechanism be established for repairing these conditions and halting their creation.[6]

In short, we have before us remedial legislation. When the legislature enacts a statute designed, as the Act is, to provide remedies not available at common law, it is not desirable that construction should be mindlessly guided by a

---

6. For further discussion of the Act, and of its remedial purposes, *see Interim Report, Governor's Landlord–Tenant Laws Study Commission* (February 1972), and Minutes of the Commission's Meetings of 23 November 1971, 2 December 1971, 14 December 1971, 6 January 1972, 8 February 1972, 13 June 1972, 10 July 1972, 1 July 1974, 11 February 1975, and 8 April 1975.

slogan, such as "statutes in derogation of the common law must be narrowly construed." Statutes of this nature "are remedial and designed to close a gap in the preexisting law...." *State v. Sherman*, 234 Md. 179, 184, 198 A.2d 71, 73 (1964). A court should not permit "a narrow or grudging process of construction to exemplify and perpetuate the very evils to be remedied...." *Van Beeck v. Sabine Towing Co., Inc.*, 300 U.S. 342, 350–351, 57 S.Ct. 452, 456, 81 L.Ed. 685, 690 (1937). Canons of construction, like the one relied on by the trial court here, may sometimes be useful guidelines, but they

> are not a set of Procrustean beds, to the dimensions of which all statutory language must be made to conform, however poor the fit.... We look at the words of the statute in the context of their adoption and from that perspective determine the meaning of the language in a manner consistent with the goal the legislature was trying to achieve.

*Carolina Freight Carriers v. Keane*, 311 Md. 335, 339, 534 A.2d 1337, 1339 (1988).

When we look at the words of the statute now before us, we see that § 8–211(n) is designed to achieve some of the purposes set forth by the legislature by putting pressure on a landlord to make repairs, by providing sanctions when that is not done, and by affording relief when it is. Thus, (n)(1) allows the court to disburse the escrow money to the landlord "after the necessary repairs have been made...." Paragraph (2) permits the disbursement of money "for the purpose of making the necessary repairs" and so does paragraph (3). Paragraph (4) allows use of the money to avoid foreclosure of a mortgage or deed of trust. We have already examined paragraph (5). Paragraph (6) authorizes return of money to the landlord "if the tenant does not regularly pay ... the rent owed" into the account. We shall revisit it later.

Some of these paragraphs speak of a hearing ordered by the court or requested by the landlord (paragraphs (1) and (3)). Others speak only of "an appropriate hearing" (paragraphs (2), (4), and (6)) without saying who should request

it. Only paragraph (5) addresses "a hearing, if one is requested by the tenant. . . ." What is critical to each of these provisions is that there be a hearing before the court acts. We may assume that there must be a hearing before either landlord or tenant is deprived of the property interest each has in the escrow fund. *Pitsenberger v. Pitsenberger,* 287 Md. 20, 30, 410 A.2d 1052, 1058, *appeal dismissed,* 449 U.S. 807, 101 S.Ct. 52, 66 L.Ed.2d 10, *reh'g denied,* 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980); and *Vavasori v. Comm'n on Human Relations,* 65 Md.App. 237, 245, 500 A.2d 307, 311 (1985), *cert. denied,* 305 Md. 419, 504 A.2d 1152 (1986). But who requests the hearing is largely unimportant to the statutory scheme, except to the extent that the law indicates that a hearing ought to be held if the designated requester asks for one; that is, under certain circumstances, certain persons are given a right to have a hearing on request.

To be sure, a request for hearing may, as Landlady argues, serve to give notice to the other party of the fact that there will be a hearing, and of its subject. Notice, as well as hearing, is a due process requirement when a constitutionally protected property interest is involved. *Pitsenberger,* 287 Md. at 30, 410 A.2d at 1058; and *Vavasori,* 65 Md.App. at 245, 500 A.2d at 311. *See also, Department of Transportation v. Armacost,* 299 Md. 392, 416–418, 474 A.2d 191, 203–204 (1984). Even absent a constitutional requirement, the legislature might think it well to provide for both notice and hearing. But in the case before us, the District Court, in a commendable effort to monitor and move its workload, gave notice. At the May 1986 session, Landlady received even more notice of what was going on. By 21 July she was fully aware of the purpose of the hearing and all that it entailed. On the facts of this case, there was ample notice and there was a full hearing.

Section 8–211(n)(5) requires no more than this. It matters not, on these facts, who gave the notice or who requested the hearing. To say that in these circumstances the District Court lacked jurisdiction because Tenant had not re-

quested the hearing is to frustrate the legislative goals, not to implement them. The circuit court erred in so holding.

III. *Return of the Escrow Fund to the Landlady*

Having decided (erroneously) that the District Court lacked jurisdiction to return the escrow fund to Tenant, the circuit court judge then had to dispose of the money. He turned first to § 8–211(m)(3) which (once a rent escrow action has been filed) permits the court to

(3) Order that the amount of rent required by the lease, whether paid into court or to the landlord, be abated and reduced in an amount determined by the court to be fair and equitable to represent the existence of the conditions or defects found by the court to exist.

Finding the existence of at least one statutory defect (no hot and cold running water), the judge was faced with a lack of evidence as to what fair rental value of the property might be, in light of that defect. The judge supplied this omission:

And since this Court is a landlord and knows something about the cost of fixing up houses, and having fixed up three in the last two years, and knowing what the rents are in the area, I think she [Tenant] got, she paid exactly what she bargained for. And that is a place to live without running water.

Because Tenant got "exactly what she bargained for," there was no reason to abate the rent. That ended consideration of possible payment to Tenant. The judge thereupon ordered payment of the escrow fund to Landlady. Several months later, in his memorandum opinion, he explained that this decision was based on § 8–211(n)(6).

█ In his rent abatement discussion, the judge improperly took judicial notice of rental values and other matters within his own personal knowledge, but not notorious or readily verifiable. Where adjudicative facts are involved, they may be judicially noticed if they "are not subject to reasonable dispute and are generally known by persons of reasonable intelligence in the jurisdiction in which the court

sits." 5 L. McLain, *Maryland Practice: Maryland Evidence* § 201.4 (1987) [footnote omitted]. And even matters not of common knowledge may be judicially noticed if they "may readily be determined by examination of a source whose accuracy cannot be reasonably questioned, [such as] geographical and historical data [and] scientific facts which are generally accepted as irrefutable by living scientists...." *Id.* [footnotes omitted]. The "cost of fixing up houses" and rental values in Queen Anne's County do not fall within any of these categories. Furthermore, a "trial judge's personal knowledge of an adjudicative fact does not make it the proper subject of judicial notice." *Id.* [footnote omitted]. But that is not important now, since rent abatement was not an issue at the de novo trial, and is not an issue here. Nobody had requested it, nobody had opposed it, and nobody had presented the necessary evidence on the subject. What is important is whether § 8–211(n)(6) supports the trial court's judgment.

■ Paragraph (6) of subsection (n), it will be recalled, allows the court, "after an appropriate hearing," to "order that the moneys in the escrow account be disbursed to the landlord if the tenant does not regularly pay, into that account, the money owed." The judge found that the trial de novo was an "appropriate hearing" and we have no quarrel with that. Nor can we take exception to the finding that Tenant, since the District Court's order of 21 July 1986, had not paid rent money into the account. The account had been terminated as of that date; Tenant was not obliged to continue to pay rent into a nonexistent escrow account. Instead, as ordered, she continued to pay rent directly to Landlady until the tenancy ended.[7] Paragraph (6) is designed to provide relief to a landlord if a tenant fails to perform his or her obligation to pay rent into an established

---

7. At some time after the District Court order for return of the escrow money to Tenant, Landlady and Tenant terminated the lease by agreement. At the time of the circuit court hearing, Tenant was living in a different home.

escrow account. It does not grant authority for returning the fund to a landlord whose tenant has in no way defaulted.

For all the reasons we have stated, the judgment of the Circuit Court for Queen Anne's County must be reversed and the District Court judgment of 21 July 1986 reinstated.

JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTION TO ENTER JUDGMENT TERMINATING RENT ESCROW BY DISBURSEMENT OF THE ESCROW FUND AND ANY ACCRUED INTEREST TO PETITIONER. RESPONDENT TO PAY THE COSTS, INCLUDING COSTS IN THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY.