*Felicia Lockett v. Blue Ocean Bristol, LLC*
No. 29, September Term, 2015

**Landlord-Tenant Law – Residential Leases – Retaliation Actions – Condition for Relief that Tenant be "Current on the Rent."** Maryland Code, Real Property Article ("RP"), §8-208.1 prohibits a landlord from retaliating against a residential tenant for certain listed reasons, including participation in a tenants association. In order to obtain relief under that statute, the tenant must be current on the payment of "rent" – a term that is not defined in the statute. For purposes of RP §8-208.1, "rent" is best understood as the periodic sum owed by the tenant to the landlord for occupancy of the premises, but does not include variable fees and charges that may be charged to the tenant pursuant to the lease, even if the lease "deems" those charges to be additional rent.

**Attorneys' Fees – Award Pursuant to Statute – Procedure**. When attorneys' fees are allowable by law, as in a case under Maryland Code, Real Property Article, §8-208.1, and the prevailing party requests an award of attorneys' fees, a circuit court that tries the case as an appeal *de novo* must follow the procedure set forth in Maryland Rule 2-703 for resolving that claim and must state the basis for its grant or denial of an award.

Circuit Court for Baltimore City
Case No. 24-C-14-006572
Argued: November 6, 2015

IN THE COURT OF APPEALS

OF MARYLAND

No. 29

September Term, 2015

_____

FELICIA LOCKETT

v.

BLUE OCEAN BRISTOL, LLC

_____

Barbera, C.J.,
Battaglia
Greene
Adkins
McDonald
Harrell, Glenn T., Jr.
    (Retired, Specially
    Assigned)
Wilner, Alan M. (Retired,
    Specially Assigned),

JJ.

_____

Opinion by McDonald, J.

_____

Filed: February 22, 2016

State law protects a residential tenant from retaliation by a landlord for certain specified activities, including participation in a tenants association. Proof of an act of retaliation may be a defense to eviction and may entitle the tenant to an award of damages, attorneys' fees, and court costs. But, even if a tenant proves an act of retaliation, the tenant is eligible for relief only if the tenant is "current on the rent." This case concerns what is meant by "rent" − a term left undefined in the statute − and how a court should handle a request for an award of attorneys' fees.

Petitioner Felicia Lockett is a tenant in an apartment building known as Bristol House in Baltimore City. She has participated in the tenants association at Bristol House and advocated vigorously on behalf of the tenants there. This apparently resulted in a contentious relationship with the landlord, Respondent Blue Ocean Bristol, LLC ("Blue Ocean").

In 2014, Blue Ocean decided not to renew Ms. Lockett's lease and, when she did not vacate the apartment, Blue Ocean filed a tenant holding over action. Ms. Lockett defended on the basis that the non-renewal and tenant holding over action were in retaliation for her advocacy on behalf of the tenants association.

The Circuit Court ultimately ruled in Ms. Lockett's favor on the question of retaliation. However, it awarded her damages for only one of two alleged acts of retaliation on the ground that she failed to prove that she was "current on the rent" at the time of the second alleged act and therefore was not eligible for relief as to that act. Although she had

fully paid the fixed monthly amount specified as the "rent" in one part of her lease, she had an ongoing dispute with Blue Ocean over her liability for other charges, such as utility charges and other fees that varied from month-to-month and that the lease "deemed rent." We hold that Ms. Lockett's other debts to Blue Ocean – even if she in fact owed them − do not factor into whether she was "current on the rent" for the purposes of the anti-retaliation statute.

With respect to Ms. Lockett's request for attorneys' fees,[1] the trial court declined to allow Ms. Lockett to provide evidence on that issue following the trial and denied the award simply by noting that an award of attorneys' fees is "discretionary." While it is true that the decision whether to award fees and the amount of any such fees is entrusted to the discretion of the trial court, we hold that the court must follow the procedure set forth in Maryland Rule 2-703 and give some explanation of its reasons for how it chose to exercise its discretion.

---

[1] There appears to be a diversity of opinion in the statutes, rules, and cases as to whether the preferred spelling is "attorney fees," attorney's fees," or "attorneys' fees." We will use the third listed alternative in this opinion, as that is how the phrase is spelled in the Maryland Rules that govern our analysis.

# Background

## A.     *Landlord - Tenant Litigation*

Maryland law provides a variety of remedies for the many possible disputes that may arise between a landlord and a tenant who are parties to a residential lease. Most such disputes are refereed by the District Court, but on occasion, as here, the case may be adjudicated in a circuit court. We begin with a brief review of the particular remedies pursued by the landlord and the tenant in this case, as they appear in the Real Property Article of the Maryland Code. Similar or superseding remedies are sometimes provided by local laws, such as those of Baltimore City. *See Parkington Apts., Inc. v. Cordish*, 296 Md. 143, 460 A.2d 52 (1983). While there are a few differences between the provisions of the Real Property Article and the Baltimore City provisions, none of those differences matter to our resolution of this case. In their arguments, the parties have focused on the provisions of the Real Property Article – and so shall we.

### 1.     Landlord Remedies

Summary ejectment and tenant holding over actions are remedies available to landlords in the context of both commercial and residential leases.

*Summary ejectment*

When a tenant does not pay rent that is owed, a landlord may bring an action for summary ejectment under Maryland Code, Real Property Article ("RP"), §8-401. "Summary ejectment proceedings empower the court to enter a money judgment for the amount of rent determined to be owing and also to issue an order for the tenant to yield

possession of the premises when the jurisdiction over the tenant has been obtained." *Schuman, Kane, Felts & Everngam, Chartered v. Aluisi*, 341 Md. 115, 122, 668 A.2d 929 (1995) (internal quotation marks omitted). If judgment is for the landlord, the tenant ordinarily must vacate the premises within four days. RP §8-401(c)(3). However, the tenant may satisfy the complaint at the trial by "tender[ing] to the landlord the rent and late fees determined by the court to be due and unpaid, together with the costs of the suit[.]" RP §8-401(c)(5). Even after a judgment is rendered in favor of the landlord, except under circumstances not relevant here, the tenant may redeem the premises "by tendering in cash, certified check or money order to the landlord or the landlord's agent all past due amounts . . . plus all court awarded costs and fees, at any time before actual execution of the eviction order." RP §8-401(e)(1).

*Tenant holding over action*

When a lease expires or is terminated, but the tenant does not vacate the leased premises, the landlord may bring an action for damages against the tenant under RP §8-402 – known as a "tenant holding over" action. If judgment is awarded in favor of the landlord, the tenant is "liable to the landlord for the actual damages caused by the holding over." RP §8-402(a)(1). The damages are at least "the apportioned rent for the period of holdover at the rate under the lease." RP §8-402(a)(2). If the landlord gave the tenant at least one-month advance notice of the landlord's desire for the tenant to vacate the premises

4

upon expiration of the lease and the tenant refused to comply,[2] the landlord can ask the court to issue a warrant of restitution to restore possession to the landlord. RP §8-402(b).

If the landlord assents to the tenant remaining in the property, the statute creates a periodic tenancy. Unless otherwise provided in the lease and initialed by the tenant, "when a landlord consents to a holdover tenant remaining on the premises, the holdover tenant becomes a periodic week-to-week tenant if the tenant was a week-to-week tenant before the tenant's holding over, and a periodic month-to-month tenant in all other cases." RP §8-402(c).

2.      Residential Tenant Remedies

Among the statutory remedies available specifically to residential tenants are rent escrow and anti-retaliation claims.

*Rent escrow*

There is "an obligation upon landlords to repair and eliminate conditions and defects which constitute, or if not promptly corrected will constitute, a fire hazard or a serious and substantial threat to the life, health or safety of occupants." RP §8-211(e). If the tenant notifies the landlord of such conditions and defects, and "[i]f the landlord refuses to make the repairs or correct the conditions, or if after a reasonable time the landlord has failed to do so, the tenant may bring an action of rent escrow to pay rent into court because of the asserted defects or conditions." RP §8-211(i). The tenant also "may refuse to pay rent and

---

[2] The public local laws of Baltimore City provide for 60 days' notice in certain circumstances. *See* Public Local Laws of Baltimore City, §9-14.

raise the existence of the asserted defects or conditions as an affirmative defense" to an action brought by the landlord to obtain the rent or recover possession of the premises. *Id.* Moneys in the rent escrow account may ultimately be disbursed to the landlord, the tenant, or third parties, depending on the facts of the particular case. RP §8-211(n). A public local law or ordinance containing similar provisions for rent escrow supersedes the State statute. RP §8-211(o).

*Claim under anti-retaliation statute*

The law prohibits a landlord from taking certain adverse actions against a tenant for reasons that the law deems improper. RP §8-208.1(a). If a landlord does so, the tenant may make a claim for "retaliatory action," either as a defense in an action for possession brought by the landlord or as an affirmative claim. RP §8-208.1(b).

In particular, a landlord may not do the following for improper reasons:

> (i)    Bring or threaten to bring an action for possession against a tenant;
> (ii)   Arbitrarily increase the rent or decrease the services to which a tenant has been entitled; or
> (iii)  Terminate a periodic tenancy.

RP §8-208.1(a)(1). The statute specifies the following as improper reasons for a landlord to take one of those actions against a tenant:

> (i)    Because the tenant or the tenant's agent has provided written or actual notice of a good faith complaint about an alleged violation of the lease, violation of law, or condition on the leased premises that is a substantial threat to the health or safety of occupants to:

6

        1.       The landlord; or

        2.       Any public agency against the landlord;

    (ii)    Because the tenant or the tenant's agent has:

        1.       Filed a lawsuit against the landlord; or

        2.       Testified or participated in a lawsuit involving the landlord; or

    (iii)    Because the tenant has participated in any tenants' organization.

RP §8-208(a)(2).

If the court finds that a landlord committed a retaliatory action, the court may award the tenant damages against the landlord in an amount not to exceed the equivalent of three months' rent, reasonable attorneys' fees, and court costs. RP §8-208.1(c)(1).[3] However, a tenant may obtain such relief only if the tenant is "current on the rent due and owing to the landlord at the time of the alleged retaliatory action," unless the tenant is withholding rent for various legal reasons. RP §8-208.1(d).

## B.    *Facts*

The pertinent facts are undisputed. Ms. Lockett has been a tenant in an apartment building in Baltimore City known as Bristol House since 2010. She originally entered into the lease with the entity that managed the property in 2010 − an annual lease that renews automatically at the end of every July. In December 2012, Blue Ocean took over ownership and management of Bristol House from the prior owner and manager – and stepped into the shoes of the landlord under Ms. Lockett's lease.

---

[3] If the court finds that the tenant's assertion of retaliatory action was made "in bad faith or without substantial justification," the court may enter a similar judgment against the tenant in favor of the landlord. RP §8-208.1(c)(2).

The lease specifies an annual "rent" in a fixed amount payable in "equal monthly installments" due on the first day of each month. Paragraph 44 of the lease provides the mechanism for the annual renewal of the lease, for its termination upon 60 days' notice, or for an alteration in its terms, such as setting a "higher rent." The lease identifies the monthly rent as $795, but it is undisputed that it had increased to $837 as a result of annual renewals by the time Blue Ocean became landlord.

Although the lease identifies a specific figure payable monthly as "rent" and provides a mechanism for setting a "higher rent," paragraph 33 of the lease – which has a tag line "Definition of Rent" – states that "All payments from [Ms. Lockett] to [the landlord] required under the terms of this lease, including, but not limited to, Court costs, shall be deemed rent." Other paragraphs of the lease identify various charges and circumstances under which a tenant may be liable to the landlord for those charges – *e.g.,* late fees, administrative fees, indemnification of the landlord for certain types of liability, repair expenses, parking fees, among others – but do not specifically relate those charges to "rent."

Several pages at the end of the document entitled "Addendum to Rental Agreement (Utilities)" concern an amendment of paragraph 17 of the lease which is entitled "Utilities." Pertinent to this case, the utilities addendum provides for the landlord to pay for the monthly gas charge for the entire building, describes how the charge is to be allocated among the residents, and obligates the tenant to reimburse the landlord for the tenant's pro rata share on a monthly basis. The utilities addendum characterizes this reimbursement by the tenant as "additional rent."

8

*The Tenant Association*

The tenants at Bristol House formed the Bristol House Tenant Association to address concerns of the residents of the property's 74 residential units. Since January 2012, Ms. Lockett has served as the liaison for the Tenant Association, representing it in communications and meetings with building management. During that time, the Tenant Association has been working to resolve complaints about alleged erroneous charges involving the master-meter utility billing system used in the building. This process included, among other things, communication with the Consumer Protection Division of the Office of the Attorney General in early 2013. The complaints were not fully resolved at the time this litigation began.

After a contentious meeting with the Tenant Association in early 2014 concerning the gas charge allocation, Blue Ocean decided in February 2014 not to renew Ms. Lockett's lease. However, Blue Ocean did not inform her of its decision at the time. Conflicts regarding metering continued for the next several months and were never completely resolved.

Eventually, Ms. Lockett found a notice dated May 28, 2014, posted on her door stating that her lease would not be renewed and that she was to vacate the premises by July 31, 2014. While the parties have articulated different definitions of "rent," it is undisputed that, as of the time she received the notice, Ms. Lockett was current on her rent, regardless of the definition.[4]

---

[4] The Circuit Court so found, and neither party has appealed that finding.

*Litigation in the District Court*

Despite the notice, Ms. Lockett did not vacate the premises. Instead, she remained in the property and withheld her June 2014 rent payment, which was due on June 1. On June 17, 2014, Blue Ocean filed a summary ejectment action in the District Court in Baltimore City against Ms. Lockett for failure to pay rent. On July 1, 2014, Ms. Lockett filed a rent escrow action in the District Court. The District Court consolidated these actions.

The District Court held an initial hearing on July 15, 2014.[5] Ms. Lockett advised the court that Catholic Charities would pay her June 2014 rent and sought to pay her July and August rent into the court registry. After hearing from Ms. Lockett and Blue Ocean, the District Court ordered that she pay rent in the amount of $837 per month into the court registry for July and August 2014. On July 28, 2014, Catholic Charities paid the June rent. On August 14, 2014, the District Court decided the case in favor of Blue Ocean. As a result, the two months of rent that had been deposited in the court registry, totaling $1674, was disbursed to Blue Ocean from the rent escrow for the July and August rent. These payments appear to have satisfied the complaint pursuant to RP §8-401(c)(5) because, even though Blue Ocean won the summary ejectment action against Ms. Lockett, Ms. Lockett was not evicted at that time.

---

[5] The proceedings of this initial District Court case do not appear in the record of this case other than through the trial testimony of Ms. Lockett before the Circuit Court. The District Court records available on Case Search, however, appear to be consistent with her testimony.

The day after the District Court ruled in favor of Blue Ocean in the summary ejectment action and that action was resolved by disbursement of the rent escrow, Blue Ocean filed another action against Ms. Lockett in the District Court — this time, a tenant holding over action under RP §8-402. In its complaint, Blue Ocean alleged that Ms. Lockett's lawful tenancy had ended on July 31, 2014. The complaint recited that the "rental for the premises" was $795 per month and sought restitution of the premises. The complaint did not refer to any other charges as "rent."

Ms. Lockett responded by alleging, both as a defense to the complaint and as a counterclaim, that Blue Ocean's non-renewal of her lease on May 28 and its filing of the tenant holding over action on August 15 were retaliatory actions for her participation in the Tenant Association. In her response, she also asserted that her monthly rent was $837, as opposed to $795, as alleged by Blue Ocean. She sought money damages in a total amount of $5,022 — that is, three times the amount of her monthly rent of $837 for each of two acts of retaliation — plus costs and attorneys' fees, pursuant to RP §8-208.1.

On October 8, 2014, the District Court decided in Blue Ocean's favor in the tenant holding over action and awarded possession of the apartment to Blue Ocean. The District Court declined to consider Ms. Lockett's counterclaim on the ground she had failed to perfect its filing by paying a $28 filing fee.

11

*De Novo Appeal in Circuit Court*

Ms. Lockett filed an appeal for a *de novo* trial in the Circuit Court for Baltimore City. She also re-filed her counterclaim in the Circuit Court. She continued to seek damages in a total amount of $5,022 for the two alleged retaliatory acts, as well as attorneys' fees and costs, both as part an of her affirmative defense as well as her counterclaim.[6]

On January 22, 2015, the Circuit Court held a bench trial. While most of the testimony at trial focused on the terms of the lease, the controversies with the Tenant Association, the notice of non-renewal, and the Blue Ocean's motive for that decision, Blue Ocean introduced evidence suggesting that Ms. Lockett was not current on her obligations to the landlord at the time of the alleged acts of retaliation. In particular, a representative of Blue Ocean introduced a ledger showing charges to, and payments by, Ms. Lockett for "rent" and other expenses, and testified that the last time prior to the trial that there was a net balance of zero or a credit in Ms. Lockett's account was October 2013. On cross-examination, the Blue Ocean representative acknowledged that its ledger did not account for the timing of payments into the court registry in the rent escrow action.

Similarly, while Ms. Lockett's testimony dealt primarily with the alleged acts of retaliation, she also addressed briefly her payments to the landlord. She testified that a

---

[6] Ms. Lockett also filed discovery requests and sought a continuance of the trial in order to conduct that discovery. Blue Ocean opposed Ms. Lockett's effort to conduct discovery. On the day of trial, the Circuit Court denied the motion for a continuance and, as a result, ruled that the discovery dispute was moot.

pending balance of $90.63 in the ledger as of May 29, 2014 (the date she received the notice of non-renewal, one of the alleged acts of retaliation) related to a disputed gas charge that was resolved in her favor shortly thereafter. She also testified about the payment of her June rent by Catholic Charities and her payment of the July and August rent into the District Court registry.

In the end, Blue Ocean did not dispute that Ms. Lockett was current on her payment of the fixed monthly installment of rent as of the filing of the tenant holding over action. However, its counsel argued that the ledger demonstrated that she owed money "counted as rent" (although not designated as such on the ledger) to Blue Ocean as of that date. The ledger itself shows a balance of approximately $244 apparently attributable to items listed as a filing fee, late fees, and gas charges. Ms. Lockett's counsel disputed that she owed some or all of those amounts and argued that, in any event, she had timely paid the fixed monthly amount actually designated as "rent" on the ledger.

After considering the testimony and documentary exhibits, the Circuit Court ruled in favor of Ms. Lockett in the tenant holding over action, finding that Blue Ocean's May 28, 2014 notice that it was not renewing her lease was "clearly an act of retaliation." The court further determined that Ms. Lockett was current on her rent at the time she received the non-renewal notice, thus satisfying the condition for relief in the anti-retaliation statute as to the first alleged act or retaliation. With respect to the second alleged act of retaliation – the filing of the tenant holding over action in the District Court – the Circuit Court found the evidence to be "muddled" as to her liability for rent and stated that it could not find that

13

Ms. Lockett was current on her rent as of the date of filing of that action (August 15, 2014). Accordingly, the Circuit Court ruled in Blue Ocean's favor on that claim.

In awarding treble damages under the anti-retaliation statute for the first claim of retaliation, the Circuit Court found "that [$]837 is the monthly rental fee" and awarded Ms. Lockett damages in the amount of $2,511. The court noted that it had "received no evidence with respect to attorneys' fees" during the trial. Ms. Lockett's counsel asked for the opportunity to submit an affidavit supporting the request for attorneys' fees, but the court denied the request in the following fashion: "[T]hat request is denied. The statute indicates that it's permissive. The Court may enter judgment and the Court may award attorneys' fees. So that request is denied." Finally, the court directed Blue Ocean to pay court costs.

Ms. Lockett filed a timely petition for a writ of *certiorari* to this Court, which we granted. We summarize the two issues raised by that petition as follows:

> (1) Do the disputed charges (the filing fee, late fees, and gas charges) matter? In other words, what is "rent" for purposes of the condition in the anti-retaliation statute (RP §8-208.1) that a residential tenant be "current on the rent" in order to invoke the remedies provided by that statute?

> (2) What procedure should a circuit court follow and what, if any, explanation must a circuit court give when it decides whether or not to award attorneys' fees to a tenant who has proven a retaliation claim in a *de novo* appeal?

14

# II

## Discussion

### A.    Standard of Review

We accept the trial court's fact findings unless they are clearly erroneous.  Maryland Rule 8-131(c).  However, we review the trial court's conclusions of law and application of law to facts without deference to the trial court.  *Tribbitt v. State*, 403 Md. 638, 644, 943 A.2d 1260 (2008).  Finally, while a decision whether to award attorneys' fees is reviewed under an abuse of discretion standard, "[t]he *standard* that a trial court applies in evaluating whether to award attorneys' fees and costs is a legal decision" that we review without deference.  *Ocean City Chamber of Commerce, Inc. v. Barufaldi*, 434 Md. 381, 391, 75 A.3d 952 (2013) (emphasis added); *see also Friolo v. Frankel*, 373 Md. 501, 512, 819 A.2d 354 (2003).

### B.    Whether Ms. Lockett was "Current on the Rent"

In the complaint initiating this action Blue Ocean alleged that "[t]he rental for the premises is $795.00 per month" – the fixed monthly payment originally required by the lease.  It is undisputed that, although $795 was the monthly rent provided by the lease when Ms. Lockett entered into it with the original landlord in 2010, that figure had risen as a result of annual renewals to $837 by the time of trial.  Blue Ocean has conceded that Ms. Lockett had paid that amount as of August 15, 2014, but argues that she was delinquent in paying other fees and charges − such as the gas charges for three months, the late fee for one month, and a court filing fee owed to the landlord − which were "deemed rent" or

15

"additional rent" under the lease.[7] (Ms. Lockett disputed the extent to which she actually owed those charges). Blue Ocean reasons that all of those charges should be considered part of the "rent" that she allegedly owed to Blue Ocean as of August 15, 2014, and that she was therefore not current on her rent as of the date of the second alleged act of retaliation. In concluding that the evidence was "muddled" on whether Ms. Lockett was "current on the rent" as of August 15, 2014, the Circuit Court apparently accepted Blue Ocean's argument that the disputed charges were part of "rent" for purposes of RP §8-208.1(d).

The question before this Court is whether these charges are "rent" for purposes of RP §8-208.1(d). If so and if the dispute over those charges was not resolved in her favor, Ms. Lockett would be ineligible for relief under the anti-retaliation statute even if she proved, to the satisfaction of the Circuit Court, that the filing of the tenant holding over action was an act of retaliation. If not, she would be eligible for relief.[8]

1.      Motion to Dismiss and Preservation of the Issue

Blue Ocean moved to dismiss Ms. Lockett's appeal pursuant to Maryland Rule 8-603(c), based on Maryland Rule 8-602(a)(1) ("the appeal is not allowed by these rules or other law"). Blue Ocean argues that the issue of the meaning of "rent" was not raised in

---

[7] In its brief to us, Blue Ocean refers to $837 as the "base rent," a phrase that does not appear in the lease.

[8] The question of what specific relief she would be entitled to is not before us.

the Circuit Court, so the issue is not preserved for review under Maryland Rule 8-131, and this Court cannot consider it, so the appeal should be dismissed.

The short answer is that these grounds are not a basis for dismissing an appeal. The longer answer – if Blue Ocean's motion is considered an argument about preservation of the legal issue for appellate review – is that the issue was adequately preserved.

*Grounds for dismissal of an appeal*

First, failing to meet the requirements of Maryland Rule 8-131 is not grounds for dismissing the appeal under Maryland Rule 8-602. *See State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 495, 92 A.3d 400 (2014) ("Neither a lack of preservation nor failure to present an argument in the petition for writ of certiorari is listed as a permissible ground upon which this Court may dismiss an appeal."). Thus, while a failure to comply with Rule 8-131 might affect whether we address the particular issue in our decision, it would not mandate dismissal of the appeal. In any event, this issue has been preserved in accordance with the requirements of Rule 8-131.

*Raised below*

Rule 8-131(a) provides, in pertinent part: "Ordinarily, the appellate court will not decide any other issue," except subject-matter and personal jurisdiction of the trial court, "unless it plainly appears by the record to have been raised in or decided by the trial court ...."

The definition of "rent" does plainly appear to have been raised in the trial court. Testimony and documentary evidence was introduced in the Circuit Court, including the lease, related documents, and ledger sheet that concerned Ms. Lockett's obligation to pay

rent and other charges and her history of payment.  Both sides presented argument to the Circuit Court as to what that court should consider in resolving whether Ms. Lockett was current on her rent.  For example, in closing, counsel for Ms. Lockett told the Circuit Court:

> [The] District Court, both in the failure to pay rent action in June and in the rent escrow case[,] had made a determination [of] what the rent owing would be and Ms. Lockett paid those amounts as the Court specified her to pay. *Blue Ocean can't come now and say that there are other amounts that they did not specify as rent and allege now that she was not current on the rent at that time.*

(emphasis added).  Similarly, in closing rebuttal, counsel for Blue Ocean said:

> You've heard testimony from Ms. Lockett that she believed she didn't owe different monies on [May 28 and August 15], but, in fact, a careful review of the record and the ledger shows that she did, in fact, owe monies. *Those monies could be included or were counted as rent.*  And as such she wasn't current on rent on the days of alleged retaliation.

(emphasis added).  Thus, counsel for both sides disputed the definition of rent in the Circuit Court and whether she was "current on the rent" at the time the tenant holding over action was filed.

The Circuit Court found, as to whether Ms. Lockett was current on her rent on August 15, 2014, that it was "fairly muddled and it was unclear to the Court and I cannot find that on [August 15] that — that Ms. Lockett was up to date on her rent."  Because there was no dispute that Ms. Lockett had paid fixed monthly installments of $837 as of August 15, the court's reluctance to find that she was current on the rent necessarily includes a legal holding that her "rent" for purposes of RP §8-208.1 was more than $837− that is, it included at least some of the additional charges.

18

To raise an issue, a party need not discuss it at length. *See Brock v. State*, 203 Md. App. 245, 270, 37 A.3d 1030 (2012) (party preserved the question of the admissibility of a statement for impeachment purposes by mentioning impeachment in a single sentence of an argument mostly devoted to admissibility for substantive use). When, as here, both parties discussed the issue and the court necessarily decided it in reaching its decision, the issue has been raised for the purposes of Rule 8-131(a).

*Raised in the petition and preserved for review*

Raising the issue below is not all that is ordinarily required. In addition, Rule 8-131(b)(1) provides, "Unless otherwise provided by the order granting the writ of *certiorari*, in reviewing a[n appellate] decision, the Court of Appeals ordinarily will consider only an issue [1] that has been raised in the petition for certiorari or any cross-petition and [2] that has been preserved for review by the Court of Appeals."

As to the first prong, the petition for *certiorari* in this case stated the following question, "Did the trial court err in relying on the landlord's claim of certain non-rent charges due and owing to conclude that the tenant was not current on her rent and thus not eligible for relief on her claim for retaliatory eviction in violation of RP § 8-208.1?" This question raises the issue of the definition of rent because it asks whether the trial court erred in considering other charges beyond the fixed monthly amount of $837 as "rent" for the purposes of the statutory condition.

The second prong requires that the issue be preserved for review, but Rule 8-131(a) already pertains to preservation in the trial court. Hence, the second prong of Rule 8-131(b)

essentially adds that the issue must not have been waived in an intermediate appeal. Here, there was no intermediate appeal, so this prong is satisfied.

For the foregoing reasons, the motion to dismiss is denied and this issue is properly before this Court under Rule 8-131.

2.  Merits

The term "rent" is not defined in the anti-retaliation statute. Nor is the term defined elsewhere in Title 8 of the Real Property Article. It seems safe to say that it is a dollar amount to be derived in some way from the lease or other agreement that allows the tenant to occupy the property. Blue Ocean argued to the Circuit Court – and to us – that it is simply a matter of applying the provisions of Ms. Lockett's lease that characterize various types of tenant obligations as "rent." But while the Legislature undoubtedly contemplated that a court would *refer* to the lease to identify "rent" for purposes of determining whether a tenant is "current on the rent" for purposes of RP §8-208.1(d), it is not at all clear that the courts are required to *defer* to the lease and to regard as "rent" anything that is labeled so by the lease.

*Commercial v. Residential Leases*

Blue Ocean relies on two prior cases that construed the meaning of "rent" in commercial leases. In the context of a summary ejectment case involving a commercial lease, the Court held that "charges which may be definitely ascertained, paid by the tenant, going to [the tenant's] use, possession, and enjoyment of rental commercial premises, are rent if such was the intention of the parties." *University Plaza Shopping Ctr., Inc. v. Garcia*, 279 Md. 61, 67, 367 A.2d 957 (1977); *see also Shum v. Gaudreau*, 317 Md. 49,

20

62, 562 A.2d 707 (1989) ("at least under some circumstances the parties' intention could determine what was rent"). In those cases, however, the Court explicitly limited its holding to commercial leases which are more likely to be the product of an arms-length negotiation. The Court reasoned that "there is little likelihood of successful overreaching on the part of the landlord and of coerced adhesion on the part of the tenant" and thus the resulting lease "would fairly represent the actual intention of the parties." *Garcia*, 279 Md. at 67. The Court signaled that it was less likely to defer to a lease's characterization of a particular charge as "rent" in the context of a residential lease where there is unequal bargaining power and "other policies … would not allow free rein in the definition of rent…." *Shum*, 317 Md. at 63 & n.9.

In this case we are not only dealing with a residential lease, but are construing a statute – RP §8-208.1 – that applies *only* to residential leases. It is unlikely that parties to a residential lease actually negotiate the definition of "rent." Residential leases are more likely to be provided on a take-it-or-leave-it basis and, as here, to be provided after the tenant has already agreed to lease the premises and to be signed by the tenant without being read. Given that residential leases are normally drafted by the landlord and not the subject of extensive negotiation, deferring to the lease's definition of "rent" would incentivize landlords to characterize all possible debts from the tenant to the landlord as "rent" so as to make it less likely that a tenant could obtain any relief under RP §8-208.1, even if the landlord had retaliated against the tenant for protected conduct. RP §8-208.1(d) does not require that the tenant owe no money at all to the landlord; it requires only that the tenant be "current on the rent."

21

*Ms. Lockett's Lease*

An examination of Ms. Lockett's lease reveals that it does not speak with one voice. The second paragraph of the lease recites that the landlord is leasing the premises to Ms. Lockett for an annual "rent" payable in equal monthly amounts. While Blue Ocean has referred to this figure as "base rent" in its brief to us, the lease itself does not use that phrase and refers to the fixed amount simply as "rent." Paragraph 44 of the lease seems to have this version of "rent" in mind in specifying the procedure for establishing a "higher rent." On the other hand, paragraph 34 of the lease, entitled "Definition of Rent," states that "all payments" that the tenant owes to the landlord are "deemed rent." A careful reading of the lease reveals that there are many potential payments that may be owed by the tenant to the landlord under a variety of circumstances – returned check charges (paragraph 4), late fees (paragraph 5), administrative and attorneys' fees (paragraph 6), indemnification of landlord liability (paragraph 11), and repairs (paragraph 13), to mention a few. An addendum to the lease refers to certain utility charges as "additional rent." It thus appears a more accurate characterization of the lease to say that it provides for "rent" in a fixed monthly amount and for "deemed rent" and "additional rent" that may or may not exist in any particular month and that can vary wildly in amount, depending on what other payments the tenant may owe the landlord.

Blue Ocean's internal records, which track payments under the lease, appear to use the term "rent" to mean the fixed monthly charge.[9]  The ledger relating to Ms. Lockett's apartment uses the term "rent" for the fixed monthly payment and uses different terms for other amounts owed or paid by Ms. Lockett, many or all of which would fall into the categories of "deemed rent" and "additional rent."

Accordingly, even if we were to defer completely to the definition of "rent" in the lease for purposes of RP §8-208.1, it is not clear what definition to derive from this lease.

*Ordinary meaning*

Having concluded that determining the "rent" for purposes of RP §8-208.1(d) is not simply a matter of accepting whatever a residential lease defines "rent" to be, we resort to the normal tools of statutory construction for guidance.  To construe a statute, we typically "begin with the normal, plain meaning of the language of the statute." *Lockshin v. Semsker*, 412 Md. 257, 275, 987 A.2d 18 (2010).  When the statute does not define a word, "we look to the ordinary and popular understanding of the word . . . to determine its meaning." *Chow v. State*, 393 Md. 431, 445, 903 A.2d 388 (2006).  Title 8 of the Real Property Article does not define the term "rent."  Therefore, to determine the meaning of "rent" in RP §8-208.1, we first consider the ordinary meaning of the term.

"Rent" ordinarily means the periodic sum paid for the use or occupancy of property. This is the typical dictionary definition.  *See, e.g.,* Merriam-Webster's Collegiate

---

[9] Blue Ocean also referred to the fixed monthly charge as the "rent" for Ms. Lockett's apartment in the complaint initiating this action and in its summary ejectment action that preceded this case.

Dictionary (11th ed.), *available at* http://www.merriam-webster.com/dictionary/rent (defining "rent" as "a usually fixed periodical return made by a tenant or occupant of property to the owner for the possession and use thereof"). It also matches the general legal definition. *See* Black's Law Dictionary (10th ed. 2014) (defining "rent" as "[c]onsideration paid, usu[ally] periodically, for the use or occupancy of property (esp[ecially] real property).").

*Other instances of "rent" in the Real Property Article*

In construing statutes, we consider the plain language "within the context of the statutory scheme to which it belongs ...." *Lockshin*, 412 Md. at 276. "We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." *Id.* In particular, other uses of the term "rent" are relevant, because "[w]hen a word susceptible of more than one meaning is repeated in the same statute or sections of a statute, it is presumed that it is used in the same sense." *Whack v. State*, 338 Md. 665, 673, 659 A.2d 1347 (1995).

Context suggests that "rent" in RP §8-208.1 ordinarily means the periodic amount paid by a tenant for use or occupancy. The anti-retaliation statute itself refers to "rent" in another provision that contemplates the ordinary meaning of that term. In addition to the requirement that the tenant be "current on the rent" in order to get relief under RP §8-208.1, the term "rent" appears in the provision describing the amount of the judgment that the court may award in an action under that statute. In particular, the court may award − to a tenant whose retaliation claim is successful, or to a landlord who successfully resists a bad-

24

faith retaliation claim − "damages not to exceed the equivalent of 3 months' rent," as well as attorneys' fees and court costs. RP §8-208.1(c). This suggests that "rent" is an ascertainable amount that is readily trebled.[10]

Other references to "rent" in the subtitle relating to residential leases − subtitle 2 of Title 8 (Landlord and Tenant) of the Real Property Article − require similar clarity and definiteness. *See* RP §§8-203(b) (security deposit limited to two months' rent), 8-203(i) (surety bond may not exceed two months' rent), 8-212.1 (tenant in active duty military not liable for more than 30 days' rent under certain circumstances), 8-212.2 (limiting liability of tenant with certain medical conditions who vacates premises to two months' rent). If "rent" means a periodic sum, then it is likely to be easily ascertainable. If "rent" includes additional charges that vary by month and circumstance, then it is not. We think it unlikely that the General Assembly intended such indeterminacy, so statutory context suggests that "rent" in RP §8-208.1 means "a periodic amount paid for occupancy."

Other provisions of Title 8 use the term "rent" in a way that appears to exclude the variable charges at issue in this case. For example, RP §8-212.3 expressly contemplates that "rent" is distinct from "payments made to a utility service provider for utility service,"

_____

[10] If "rent" were an unpredictably variable figure from month to month, there would be inherent uncertainty as to whether to treble the figure from a particular month and, if so, which month, or whether to cumulate the figures from particular months and, if so, which months.

In this case, although the Circuit Court apparently believed that the other charges might be part of the "rent" that had to be paid as a condition of obtaining relief under RP §8-208.1, it did not hesitate to use the fixed monthly amount to calculate treble damages – *i.e.,* the court multiplied the monthly rent of $837 by three to compute $2,511 as damages.

25

because it allows such payments to be deducted from rent under certain circumstances. Likewise, RP §8-401 provides that a landlord may recover, for nonpayment of rent for a residential tenancy, both "late fees" and "costs of the suit" indicating that the statute treats "rent" as distinct from late fees. In these provisions at least, the Real Property Article appears to treat utility charges (such as the gas charges here) and late fees as separate from rent.

*Legislative purpose*

"A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny." *Lockshin*, 412 Md. at 274. We seek to "construe the statute in a way that will advance [the statute's] purpose, not frustrate it." *Neal v. Fisher*, 312 Md. 685, 693, 541 A.2d 1314 (1988).

One possible statutory purpose is to "provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries." *Langston v. Riffe*, 359 Md. 396, 408, 754 A.2d 389 (2000) (quoting 3 Norman J. Singer, *Sutherland's Statutory Construction*, § 60.02, at 152 (5th ed. 1993)). When a statute provides remedies not available at common law, the statute is remedial. *Neal*, 312 Md. at 693 (construing rent escrow statute). "[O]nce we have determined that a statute is remedial in nature . . . it must be liberally construed . . . in order to effectuate [its] broad remedial purpose." *Pak v. Hoang*, 378 Md. 315, 326, 835 A.2d 1185 (2003) (internal quotation marks omitted) (construing statute providing remedies for tenant when landlord wrongfully withholds security deposit). For similar reasons, "exemptions from remedial legislation

26

must be narrowly construed." *State Admin. Bd. of Election Laws v. Billhimer*, 314 Md. 46, 64, 548 A.2d 819 (1988).

RP §8-208.1 is designed to protect tenants in residential properties against retaliation by landlords. It provides remedies for a tenant when a landlord retaliates in certain ways against the tenant for a variety of reasons. These remedies were not available at common law; indeed, the remedies available under Maryland law were much more limited until RP §8-208.1 was rewritten in 2011. *See* Chapter 264, Laws of Maryland 2011 (among other things, eliminating the requirement that the landlord act "solely" for a retaliatory purpose and allowing retaliation claims based on landlord actions other than an eviction).

Hence, RP §8-208.1 is remedial, and RP §8-208.1(d), which is an exemption from a remedial statute — exempting a landlord who has violated RP §8-208.1 from being required to provide relief to a tenant if the tenant is not current on the rent — is to be construed narrowly. Consequently, when choosing between a broader, uncertain definition of "rent" that includes more than the periodic sum and a more specific definition that includes only that amount, we will employ the more specific definition. For purposes of RP §8-208.1, "rent" means the periodic sum owed by the tenant for use or occupancy of the premises.

*Conclusion*

The anti-retaliation statute, which applies only to residential tenancies, does not include a definition of "rent." The ordinary meaning of "rent," the statutory context, and the remedial purpose of the statute all lead to the conclusion that the term "rent" in RP §8-

208.1 denotes the periodic charge for use or occupancy of the premises, but not the various other payments that the tenant may owe to the landlord from time to time, even if the lease characterizes them as "deemed rent" or "additional rent."

Accordingly, the gas charges, late fees, and court filing fee that Ms. Lockett allegedly owed to Blue Ocean on the date (August 15, 2014) that Blue Ocean filed its tenant holding over action are not relevant to the question whether she was "current on the rent." There is no dispute that Ms. Lockett was current in paying the fixed monthly amount designated in the lease as of that date. Thus, Ms. Lockett was not ineligible for relief as to the second alleged act of retaliation on the ground that she failed to satisfy the statutory condition of being "current on the rent."

## C.    *Attorneys' Fees*

When a court "finds in favor of the tenant because the landlord engaged in a retaliatory action, the court may enter judgment against the landlord for damages not to exceed the equivalent of 3 months' rent, reasonable attorney[s'] fees, and court costs." RP §8-208.1(c)(1). Noting that the statute says that the court "may" award attorneys' fees, the Circuit Court in this case declined to do so, but did not provide any reasons.

1.    Whether a court must explain its denial of an award of attorneys' fees

When a party makes a claim for attorneys' fees allowed by law, a circuit court must explain its reasons for declining to make an award. Maryland Rule 2-703(g) states: "The court shall state on the record or in a memorandum filed in the record the basis for its grant or denial of an award [of attorneys' fees]." This is necessary because it is otherwise impossible for an appellate court to review the reasons for the denial. *See Barufaldi*, 434

Md. at 401-2 (a trial court commits legal error if it considers the wrong factors when deciding whether to award attorneys' fees); *Bd. of Trustees, Cmty. Coll. of Baltimore County. v. Patient First Corp.*, 444 Md. 452, 486, 120 A.3d 124 (2015) ("there must be sufficient information in the record to enable a reviewing court to follow the reasoning of the trial court").

Blue Ocean resists this analysis, suggesting that Rule 2-703 does not apply here. It argues that the appropriate rule is Maryland Rule 3-741, which lacks the language requiring the "basis" for the grant or denial of an award of attorney fees. However, Rule 3-741 applies to District Court proceedings, while Rule 2-703 applies to circuit court proceedings – the relevant forum in this case. Blue Ocean suggests that Rule 3-741 should carry over to the Circuit Court here because the Circuit Court heard the case on appeal from the District Court. However, the Circuit Court heard the case *de novo*. In an appeal *de novo*, "the appeal shall proceed in accordance with the rules governing cases instituted in the circuit court," except as to certain issues regarding the pleadings and discovery. Maryland Rule 7-112(d). Thus, Rule 2-703, which governs whether attorneys' fees are included in a judgment and does not deal with pleadings or discovery, applied to the Circuit Court's decision in this case, and the Circuit Court was required to explain its reasons for a denial of attorney fees.

2.      Whether Ms. Lockett waived her right to request attorneys' fees

Blue Ocean argues that Ms. Lockett waived her right to an award of attorneys' fees. Blue Ocean notes that Ms. Lockett did not present evidence regarding attorneys' fees

29

during the trial and contends that Rule 3-741 suggests that Ms. Lockett has, as a result, waived attorneys' fees.

For the same reason outlined above, we look to Rule 2-703 rather than Rule 3-741. Under Rule 2-703(c), unless the Circuit Court ordered otherwise, it was to conduct a scheduling conference and enter a scheduling order that, among other things, "determine[d] whether evidence regarding the party's entitlement to attorneys' fees or the amount thereof may practicably be submitted during the parties' cases-in-chief with respect to the underlying cause of action or should await a verdict by the jury or finding by the court with respect to that underlying cause of action." Maryland Rule 2-703(c)(2). Thus, if a circuit court does not hold a scheduling conference to deal with the question of attorneys' fees, the rule requires it to come up with an alternative mechanism and "order otherwise." [11]

In this case, Ms. Lockett's pleadings requested attorneys' fees. Accordingly, the parties and the Circuit Court were on notice that attorneys' fees were at issue in this case; and, indeed, it was the trial judge who raised the question during his announcement of his decision. However, the Circuit Court did not hold a scheduling conference or "order otherwise" as to the presentation of evidence on her claim for attorneys' fees. As a result, counsel for Ms. Lockett was understandably confused whether to submit evidence regarding attorneys' fees during the trial on the merits or after the court announced its decision. In light of this confusion, Ms. Lockett did not waive her claim for attorneys' fees

---

[11] We understand that a circuit court may not routinely hold a scheduling conference for a trial *de novo,* because there is typically no discovery in a case appealed from the District Court to a circuit court. *See* Maryland Rules 2-504.1, 7-112(d)(2).

30

when her counsel waited to offer evidence on that subject until after the Circuit Court held that she had prevailed on the underlying claim.

Finally, even if Rule 3-741 had applied to this case, the analysis would be much the same. Because Ms. Lockett was seeking attorneys' fees as a prevailing defendant in an action brought under RP §8-402, the court would have been required to "set a schedule for written submissions in support of and in opposition to the right to such fees and the reasonableness of the requested fees, or . . . schedule a hearing, or both, as the court deems appropriate." Maryland Rule 3-741(d)(4). That is, Rule 3-741 requires the trial judge to set a schedule for deciding the question of attorneys' fees, just as Rule 2-703 does.

## III

### Conclusion

For the reasons set forth above, we hold that "rent" for purposes of RP §8-208.1 means the periodic sum owed by a residential tenant to a landlord for use or occupancy of the premises. Accordingly, Ms. Lockett was not ineligible for relief as to the second alleged act of retaliation on the ground that she failed to satisfy the condition of being "current on the rent." In addition, we hold that a prevailing party at a trial *de novo* in a circuit court in an action under RP §8-208.1 should be permitted an opportunity in accordance with Rule 2-703 to submit evidence concerning the party's entitlement to attorneys' fees. After considering any such evidence and related argument, the court should state the basis for the exercise of its discretion to grant or to deny an award.[12]

---

[12] Blue Ocean argued a number of issues in its brief to us that were not raised in the petition for *certiorari* or in a cross-petition for *certiorari*, including whether the two alleged

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT.**

---

acts of retaliation by Blue Ocean should be considered a single act of retaliation, whether the Circuit Court should have struck Ms. Lockett's counterclaim, and whether Ms. Lockett presented sufficient evidence of damages. We need not address those issues in order to resolve the issues that *were* raised in the petition for *certiorari* and decline to do so. *See* Maryland Rule 8-131(b)(1). To the extent appropriate, the Circuit Court may consider those issues on remand.