*Wendy Cane v. EZ Rentals*,
No. 1, September Term 2016

**Landlord-Tenant Law - Summary Ejectment – Defense under Rent Escrow Statute.**
The summary ejectment statute provides a process for a landlord to obtain a judgment for unpaid rent and to regain possession of the premises from a delinquent tenant. The rent escrow law provides a tenant with remedies for serious conditions and defects in a residential rental unit that a landlord has failed to repair. Under the rent escrow statute, a tenant may refuse to pay rent and raise the existence of the asserted defects or conditions as an affirmative defense to a summary ejectment action brought by the landlord. Maryland Code, Real Property Article, §§8-211, 8-401.

IN THE COURT OF APPEALS
OF MARYLAND

No. 1
September Term, 2016

_____

WENDY CANE

V.

EZ RENTALS

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by McDonald, J.

_____

Filed:  November 29, 2016

The General Assembly has provided a residential tenant who experiences serious conditions or defects in a rental unit with legal remedies in what is known as the rent escrow statute. That statute places "an obligation upon landlords to repair and eliminate conditions and defects which constitute, or if not promptly corrected will constitute, a fire hazard or a serious and substantial threat to the life, health, or safety of occupants."[1] That statute creates both a cause of action for the tenant and an affirmative defense that may be asserted by the tenant in certain types of actions that may be brought by a landlord. If the tenant is successful in showing that the landlord was aware of such a defect and failed to correct it, the tenant may be entitled to an abatement or reduction of the rent, among other relief.

Petitioner Wendy Cane rented an apartment in a house in Calvert County managed by Respondent EZ Rentals. EZ Rentals filed a summary ejectment action against her to collect unpaid rent for the month of January 2015 and to regain possession of the unit. During the bench trial in the Circuit Court, Ms. Cane attempted to submit evidence of what she asserted were serious defects in the rental property, including a leak that resulted in a threat to shut off water service to the property. The Circuit Court declined to accept Ms. Cane's proffered evidence on the ground that it would be relevant only in an affirmative rent escrow action which, the court believed, must be filed as a separate action. Ultimately, the Circuit Court entered a monetary judgment in favor of EZ Rentals and awarded possession of the rental unit to the landlord.

---

[1] Maryland Code, Real Property Article, §8-211(e).

This appeal followed. We hold that Ms. Cane was not required to present her evidence and contentions under the rent escrow statute in a separate action, but could also present them in defense of the summary ejectment action brought by EZ Rentals. Of course, simply because a tenant alleges such defects does not by itself amount to a valid defense to a summary ejectment action. Accordingly, we vacate the judgment of the Circuit Court and remand the matter so that the Circuit Court may consider whether Ms. Cane's proffered evidence would make a difference in its decision.

# I

## Background

### A. *Summary Ejectment and Rent Escrow*

The Maryland statutes that govern disputes between landlords and tenants who are parties to a residential lease are codified in Title 8 of the Real Property Article ("RP") of the Maryland Code.[2] Pertinent to this case are the statutes concerning summary ejectment and rent escrow.

#### 1. Summary Ejectment

When a tenant does not pay rent that is owed, a landlord may bring an action under RP §8-401 to obtain a judgment for the unpaid rent and to repossess the premises. Such an action is known as summary ejectment. "Summary ejectment proceedings empower the

---

[2] Similar remedies are sometimes provided by local laws. *See Parkington Apts., Inc. v. Cordish*, 296 Md. 143, 146 n.1 (1983); RP §8-211(o). No such local remedies are at issue in this case.

2

court to enter a money judgment for the amount of rent determined to be owing and also to issue an order for the tenant to yield possession of the premises when the jurisdiction over the tenant has been obtained." *Schuman, Kane, Felts & Everngam, Chartered v. Aluisi*, 341 Md. 115, 122 (1995) (internal quotation marks omitted).

Summary ejectment proceedings are expedited. A trial is ordinarily to be held on the fifth day following the filing of the complaint. RP §8-401(b)(3)(i). The statute allows a court to adjourn the trial for one day to permit a party to procure necessary witnesses if it is in "the interests of justice," but requires the consent of both the landlord and the tenant for a longer postponement. RP §8-401(c)(1). If the tenant was personally served with the complaint and if the trial does not take place within five days of the filing of the complaint, the trial court may include in the judgment any unpaid rent and late fees accruing since the filing of the complaint, as well as court costs. RP §8-401(c)(2)(iii)-(iv). If judgment is for the landlord, the tenant ordinarily must vacate the premises within four days. RP §8-401(c)(3).

If the judgment is in favor of the landlord, including restitution of the premises, the tenant has a "right to redemption of the leased premises" if the tenant tenders to the landlord the amount of the judgment, as well as any court-awarded costs and fees, before the execution of the judgment. RP §8-401(e)(1). However, a tenant who has had three judgments of possession for unpaid rent within the previous 12 months does not have a right of redemption. RP §8-401(e)(2). When a court holds that a tenant no longer may redeem the tenancy for that reason, it is said to foreclose the right of redemption.

3

Summary ejectment cases originate in the District Court. RP §8-401(b). Either party may appeal to the Circuit Court within four days of the District Court's judgment. RP §8-401(f)(1). If the tenant appeals, the tenant must furnish an appeal bond to stay execution of the judgment. RP §8-401(f)(2)-(3).

2. Rent Escrow

The rent escrow statute is designed to provide an incentive for a landlord to repair "serious and dangerous defects" in a residential rental unit by creating "meaningful sanctions" for a landlord who allows such conditions to exist. RP §8-211(a)-(b). The statute establishes "an obligation upon landlords to repair and eliminate conditions and defects which constitute, or if not promptly corrected will constitute, a fire hazard or a serious and substantial threat to the life, health or safety of occupants." RP §8-211(e). It is "remedial legislation" that should not be construed narrowly. *Neal v. Fisher*, 312 Md. 685, 693-94 (1988).

The statute provides a non-exhaustive list of examples of conditions for which a tenant may seek relief under statute. Such conditions include:

> (1) Lack of heat, light, electricity, or hot or cold running water, except where the tenant is responsible for the payment of the utilities and the lack thereof is the direct result of the tenant's failure to pay the charges;
>
> (2) Lack of adequate sewage disposal facilities;
>
> (3) Infestation of rodents in two or more dwelling units;
>
> (4) The existence of any structural defect which presents a serious and substantial threat to the physical safety of the occupants; or

4

(5) The existence of any condition which presents a health or fire hazard to the dwelling unit.

RP §8-211(e)(1)-(5). There is a rebuttable presumption that such conditions do not include minor defects or the "absence of air conditioning." RP §8-211(f).

The rent escrow statute creates both an affirmative cause of action for a tenant and a defense to certain actions brought by a landlord. If the tenant notifies the landlord of serious conditions or defects, and "[i]f the landlord refuses to make the repairs or correct the conditions, or if after a reasonable time the landlord has failed to do so, the tenant may bring an action of rent escrow to pay rent into court because of the asserted defects or conditions." RP §8-211(i). The tenant also "may refuse to pay rent and raise the existence of the asserted defects or conditions as an affirmative defense" to an action brought by the landlord to obtain the rent or recover possession of the premises. *Id.* As a condition for relief under the statute, the tenant must notify the landlord of the defect and may be required to pay the rent to the court. RP §8-211(g) and (k). Tenants who have a certain number of judgments for unpaid rent within the 12 months prior to initiation of the action may not obtain relief under the statute. *Id.*

In adjudicating issues under the rent escrow statute, the trial court is to make "appropriate findings of fact" and order relief either for the landlord – *e.g*., termination of the lease and restitution of the premises – or the tenant – *e.g.,* abatement of the rent and an order that the landlord make necessary repairs. RP §8-211(m).

***B.*** *Facts*

*The Rental*

The basic facts of the landlord-tenant relationship and the procedural path of this case are undisputed. As will become apparent, there were some disputes of fact between the tenant and landlord at the trial, but we need only acknowledge them, rather than resolve them, to address the legal question at issue.

The rental property in question is located at 1235 Golden West Way in Lusby, Calvert County. The property is a single-family residence that has been divided into a ground floor unit and a basement unit. During the relevant period, Daniel Brown owned the property, by virtue of an installment contract with a partner.[3] Mr. Brown rented out the units and managed the property through EZ Rentals.[4] Beginning in May 2013, Ms. Cane rented the ground floor unit from EZ Rentals under a one-year lease. When the lease expired, Ms. Cane continued to occupy the unit as a month-to-month tenant.

*Summary Ejectment Action in District Court*

On January 7, 2015, EZ Rentals filed a summary ejectment action against Ms. Cane in the District Court of Maryland sitting in Calvert County. The complaint sought rent for

---

[3] At trial, Mr. Brown told the Circuit Court that he owned the property with a partner, but did not identify the partner.

[4] Although the record is not entirely clear, EZ Rentals may have been a trade name used by Mr. Brown, or by Mr. Brown and his partner, as opposed to an independent entity.

6

the month of January 2015 in the amount of $1,100,[5] as well as a late fee of $50, foreclosure

of Ms. Cane's right of redemption,[6] and possession of the property. A week later, the

District Court entered a judgment in favor of EZ Rentals in the amount of $1,150 and

granted judgment for possession of the property, without the right of redemption, to EZ

Rentals. On January 20, Ms. Cane noted a timely appeal to the Circuit Court and posted a

court-ordered appeal bond in the amount of $1,150.

*De Novo Appeal in Circuit Court*

A *de novo* bench trial was held in the Circuit Court for Calvert County on June 26,

2015.[7] At the trial, Ms. Cane appeared without counsel and Mr. Brown appeared on behalf

of EZ Rentals, also without counsel.

At the outset of the trial, Mr. Brown asked the Circuit Court to award a judgment

for rent pertaining to the months of January through June 2015. While EZ Rentals' original

---

[5] It appears that the complaint filed in the District Court originally sought a judgment for "$1,000" in rent for the month of January, but was revised by hand to state "$1,100." At trial in the Circuit Court, Mr. Brown testified that the monthly rent for the unit was $1,000, and exhibits submitted by Mr. Brown indicated that Ms. Cane owed a monthly rent of $1,000. But both the District Court and Circuit Court ultimately awarded a judgment for $1,100 in rent for the month of January 2015. There does not appear to be any explanation in the record for these discrepancies. In any event, they do not affect our disposition of this case.

[6] The complaint alleged that there had been three prior judgments for possession against Ms. Cane and listed what appeared to be case numbers.

[7] The trial was initially scheduled for March 30, 2015. It was continued for 90 days in light of a potential resolution under which Ms. Cane would vacate the premises within 90 days, EZ Rentals would dismiss the case, and Ms. Cane would receive the proceeds of the appeal bond. That resolution apparently did not come to fruition.

7

complaint had sought unpaid rent for the month of January and the District Court had awarded judgment for that month alone, Mr. Brown asserted that he had received only $500 in rent payments from Ms. Cane from November 2014 through June 2015 and that she was in arrears on her rent in the amount of $7,000 or $8,000. For her part, Ms. Cane expressed surprise that the subsequent months were at issue in the trial. She testified that, although she had sometimes paid late, she had paid all rent due through May 15, 2015 directly to EZ Rentals' property manager by means of money orders. She stated that the landlord's online payment system did not reflect all of the payments she had made directly to the property manager with money orders.

Ms. Cane asked for a one-day adjournment to produce receipts to document her payments with respect to the new issue raised by Mr. Brown relating to months other than January. The Circuit Court declined to postpone the case for a day, but took a brief recess to allow Ms. Cane to print some receipts from her computer. After the recess, Ms. Cane was able to provide some receipts for rent payments for the months between February and May 2015. She also presented an email dated March 12, 2015 from the EZ Rentals' property manager stating "March rent received/paid money orders." The property manager was also called as a witness and confirmed that Ms. Cane had made some, though not all, rent payments since the beginning of the year. Documents retrieved by Mr. Brown also showed that Ms. Cane had made rent payments during the period in question and Mr. Brown ultimately conceded that Ms. Cane had paid $3,500 with respect to those months.

8

*"Other Issues" and "Offsets"*

During her testimony Ms. Cane also attempted to testify about "extenuating circumstances" and "other issues" with the property. She said that there were "relevant and substantial" defects in the property and began to describe a major water leak for which the water company had threatened to turn off the water and had sent her a $600 bill. She asked for an "offset"[8] related to the water problems. The Circuit Court declined to hear this testimony on the ground that those issues were "a completely separate landlord/tenant issue." The trial court explained that "[t]oday we are not talking about anything but your failure to pay rent, alleged failure to pay rent. We are not talking about no heat, no water…."

Ms. Cane then provided the court a letter detailing some expenses she had incurred with respect to the various problems she said she had experienced with the rental unit. The court reviewed the items listed in the letter, but declined to consider any of them in connection with the summary ejectment proceeding. The court stated:

> Point one talks about utilities; utilities are not an issue today. Point two talks about water leak; water leak and repairs, damages to the leasehold are not issues today. Three, water leak consuming 1.5 gallons

---

[8] A more appropriate term might be "recoupment" or "setoff." Technically, recoupment means "a diminution or a complete counterbalancing of the adversary's claim based upon circumstances arising out of the same transaction on which the adversary's claim is based." *Imbesi v. Carpenter Realty Corp.*, 357 Md. 375, 380 (2000). Setoff refers to "a diminution or a complete counterbalancing of the adversary's claim arising out of a transaction other than that on which the adversary's claim is based." *Id.* We need not decide which common law label is most descriptive of Ms. Cane's rent escrow defense, as it is authorized by statute.

9

of water per minute, not an issue to be resolved today. Four, AC broke, another problem with the leasehold, that is not an issue to be resolved in a failure to pay rent case. And the washing machine broke, it wasn't repaired, the emergency repairs generated cost 150 so far, another problem with the leasehold. *There [are] separate proceedings to deal with these things.*

(emphasis added). Ms. Cane offered to provide additional documentation, but the Circuit Court declined to accept it and reiterated that issues relating to defects in the property had to be pursued in a separate proceeding, noting that "nobody is stopping you from suing on that."

*Circuit Court Judgment*

Once the evidence was concluded, the Circuit Court ruled from the bench in favor of EZ Rentals for the January rent. While the court was rendering its judgment, the following discussion took place:

| THE COURT: | They have made their case on [the January rent]. I will make the record clear, that this is the fourth suit, they put in – |
|---|---|
| MS. CANE: | Yeah, they have that right, but – but then how can I have the offsets heard? Because [the property manager] will admit, he has told me many times, for instance, this is one small item, that they would pay [$]250 in water bills. He – they – I – every time I had to pay that. |
| THE COURT: | Well, for one thing, they can't do that. They can't offset rent by paying for maintenance on other things. |
| MS. CANE: | No, but they had to offset that they didn't repair it when – |
| THE COURT: | *No, no, that's called a rent escrow. And you have to file for that.* You have to get the Health Department out |

10

|              |                                                                          |
| :----------- | :----------------------------------------------------------------------- |
|              | there.  They have to verify that the place is unsanitary and uninhabitable. |
| MS. CANE:    | Oh, but they have.                                                       |
| THE COURT:   | *But that's a separate action.*                                          |
| MS. CANE:    | Oh, right, right.                                                        |
| THE COURT:   | Yes.  And then the District Court Judge would escrow your rent until they got the repairs made. |

(emphasis added).

The Circuit Court rendered judgment in favor of EZ Rentals in the amount of $1,150, ordered the appeal bond released to EZ Rentals, and foreclosed Ms. Cane's right of redemption.  The judgment was incorporated in a document entitled "Daily Sheet" filed in the court record.

*Appeal*

On July 8, 2016, Ms. Cane filed a timely appeal but mistakenly directed it to the Court of Special Appeals.[9]  The appeal was transferred to this Court to be considered as a petition for a writ of *certiorari*,[10] which we granted.

---

[9] That same date, the Circuit Court disbursed the proceeds of the appeal bond posted by Ms. Cane in a check that named Mr. Brown as payee.  The mailing containing the check was later returned to the court as undeliverable.  The record does not reflect the current status of the proceeds of the appeal bond.

[10] *See* Maryland Code, Courts & Judicial Proceedings Article, §12-305; Maryland Rule 8-132.

*Other Post-Trial Developments*

We are advised that Mr. Brown died in a drowning accident on July 25, 2015. We are further advised that the monetary judgment against Ms. Cane has been listed as an asset of Mr. Brown's estate. EZ Rentals has not appeared in this case since we granted *certiorari*. Nor has Mr. Brown's estate, his partner, or any successor to EZ Rentals sought substitution as a party in lieu of EZ Rentals pursuant to Maryland Rule 2-241. With the permission of the Court, the Maryland Multi-Housing Association, Inc. ("the Association") filed an *amicus* brief supporting the position of the landlord and defended the judgment of the trial court at oral argument.[11]

We are also informed that the property in which Ms. Cane's unit was located was sold in November 2015 to Wells Fargo Bank, N.A. as a result of a foreclosure proceeding in the Circuit Court for Calvert County.[12] We were advised by the Association that there have been further proceedings under federal and State laws governing rental units when a landlord is in foreclosure[13] and that Ms. Cane's tenancy was likely to terminate as a result of those proceedings.

---

[11] The Court appreciates the participation of the Association and its very capable defense of the judgment of the Circuit Court.

[12] A review of the Judiciary's case search database confirms that information.

[13] *See* RP §7-105.6; *Curtis v. US Bank National Ass'n*, 427 Md. 526 (2012).

12

## II

## Discussion

We granted the petition for *certiorari* to consider whether a tenant, such as Ms. Cane, may assert and prove a defense under the rent escrow statute in a summary ejectment proceeding brought by the landlord and, if so, whether the tenant may seek a reduction of the rent due in that proceeding.

The Association has raised a preliminary issue in its *amicus* brief. It contends that the death of Mr. Brown and the foreclosure and sale of the property to Wells Fargo have rendered this appeal moot.

### A.   *Mootness*

This Court has the constitutional authority to express its views on a legal issue in a moot case, but typically dismisses a moot appeal without doing so. *Mercy Hospital, Inc. v. Jackson*, 306 Md. 556, 562 (1986). An initial question, however, is whether an appeal is in fact moot. The test is whether "past facts and occurrences have produced a situation in which, without any future action, any judgment or decree the court might enter would be without effect." *Hayman v. St. Martin's Evangelical Lutheran Church*, 227 Md. 338, 343 (1962). A case is not moot where it is "apparent that a party may suffer collateral consequences from a trial court's judgment." *In re Kaela C.*, 394 Md. 432, 453-54 (2006); *see also Toler v. Motor Vehicle Administration*, 373 Md. 214, 219 (1973) (appeal concerning merits of driver's license suspension not moot, even though suspension had expired, because of potential collateral consequences of suspension).

13

According to the Association, there is no longer any effective remedy that a court can provide to Ms. Cane in this case because there is no longer a landlord-tenant relationship between her and EZ Rentals. It is true that no relief can be granted in this action as to Ms. Cane's possession of the rental unit. EZ Rentals, to the extent it continues to exist, is no longer the landlord. But the judgment in this case did not concern only possession of the rental unit. The Circuit Court found that Ms. Cane owed $1,150 to EZ Rentals and entered a judgment in that amount.

Although the judgment of possession and the foreclosure of the right of redemption have been overtaken by subsequent events, a ruling on the merits of the monetary judgment and the potential rent escrow defense would resolve whether Ms. Cane has a claim against Mr. Brown's estate (or his partner or EZ Rentals), or vice-versa. In addition, Ms. Cane may suffer collateral consequences from the trial court's judgment. A civil judgment may be included on an individual's credit report, with a concomitant negative effect on the individual's credit score.[14] A low credit score in turn carries a plethora of negative consequences. An adverse judgment in a summary ejectment case may affect an individual's ability to rent a residence in the future.[15] Moreover, a judgment in a summary

---

[14] J. Ulzheimer, *Will An Eviction Show Up On My Credit Report?* SMARTCREDIT, (Jan. 9, 2013), http://blog.smartcredit.com/2013/01/09/will-an-eviction-show-up-on-my-credit-report/ (last accessed Sept. 21, 2016) https://perma.cc/3K5L-4HL5.

[15] *See* Columbia Legal Services, Fair Housing Disparate Impact Claims Based on the Use of Criminal and Eviction Record in Tenant Screening Policies 2, 4 (2015) (noting

ejectment case may affect a tenant's right to redeem a rental unit in a future dispute with a landlord.[16]

In light of the effect that this appeal could have on the validity of the monetary judgment entered in favor of EZ Rentals against Ms. Cane and the potential collateral consequences for Ms. Cane, we cannot say that our resolution of this case would be "without effect." Accordingly, this appeal is not moot.

## B. *The Merits*

### 1. Standard of Review

In an appeal of a bench trial, we review the case on both the law and the evidence. Maryland Rule 8-131(c). We accept the trial court's fact findings unless they are clearly erroneous. *Id*. However, we review the trial court's conclusions of law and application of law to facts without deference to the trial court. *Tribbitt v. State*, 403 Md. 638, 644 (2008).

### 2. Right to Assert a Rent Escrow Defense in a Summary Ejection Action

*Rent Escrow Defense*

The primary legal issue in this case – whether a tenant may raise issues under the rent escrow statute as a defense in a summary ejectment action – is straightforward. Under the rent escrow statute, a tenant "may refuse to pay rent and raise the existence of the

___

that landlords use information gathered by "tenant screening" companies, including eviction histories culled from court records, to screen potential tenants).

[16] *See* RP §8-401(e)(2).

15

asserted defects or conditions *as an affirmative defense* to an action for distress for rent *or to any complaint proceeding brought by the landlord to recover rent or the possession of the leased premises*." RP §8-211(i) (emphasis added).[17]

The summary ejectment statute authorizes the court to enter a money judgment for the amount of unpaid rent determined to be owing and to issue an order for the tenant to yield possession of premises to the landlord. RP §8-401(d). Thus, a summary ejectment action is a "proceeding brought by the landlord to recover rent or the possession of the leased premises." Under the plain meaning of the language of the rent escrow statute, the affirmative defense created by RP §8-211(i) is applicable in a summary ejectment action.

If a tenant is successful in establishing a defense under the rent escrow statute, the tenant is entitled to various forms of relief authorized by the statute "[w]hether the issue of rent escrow is raised affirmatively *or defensively*." RP §8-211(j) (emphasis added). Among the types of relief authorized by the statute is an order abating or reducing the rent owed by the tenant to the extent "fair and equitable" in light of the conditions or defects found by the court. RP §8-211(m)(3). In other words, a court may allow an "offset" if it finds a serious defect and believes it just to do so.

The Association does not seriously dispute this interpretation of the two statutes. Rather, in defending the Circuit Court judgment, it asserts alternatively (1) that the Circuit

---

[17] The statute has authorized this defense since it was first enacted more than four decades ago. Chapter 414, Laws of Maryland 1975. The legislative purpose and history of the provision are summarized briefly in *Neal v. Fisher*, 312 Md. 685 (1988).

Court in fact considered Ms. Cane's rent escrow defense and rejected it on the merits, (2) that the defects alleged by Ms. Cane did not qualify for consideration under the rent escrow statute, (3) that the judgment rendered actually included a recoupment in Ms. Cane's favor, or (4) that Ms. Cane was ineligible to invoke the rent escrow defense from the outset of the proceeding. We consider each of those points in turn.

*Whether the Circuit Court Considered the Merits of the Rent Escrow Defense*

The Association suggests that the Circuit Court actually considered Ms. Cane's rent escrow defense, but determined that the conditions or defects she alleged were not so serious as to support a rent escrow claim. The record does not bear out that argument. The Circuit Court consistently declined to accept evidence or hear argument from Ms. Cane concerning what she contended were serious defects in the property that the landlord had failed to correct. Indeed, at one point the court cut her off, stating that "we are not talking about anything but your failure to pay rent, alleged failure to pay rent. We are not talking about no heat, no water …." Ironically, the rent escrow statute explicitly identifies lack of heat or water as conditions that may support a rent escrow defense and justify abatement of the rent. RP §8-211(e)(1); *e.g., Neal v. Fisher*, 312 Md. 685, 689 (1988).

The Circuit Court apparently believed that the rent escrow statute required Ms. Cane to file a separate action as a prerequisite to any relief under that statute. The court repeatedly stated that Ms. Cane's contentions concerning defects in the property needed to be pursued in a "separate action" called a "rent escrow" proceeding. There would be no point to advising Ms. Cane to institute a separate affirmative rent escrow action if the court

17

had already determined that her contentions lacked merit. Moreover, the court made no findings of fact with respect to her contentions – as required by RP §8-211(m) – if the court had actually addressed their merits.

*Whether the Defects Alleged by Ms. Cane Qualified under the Rent Escrow Statute*

The Association also argues that Ms. Cane's proffered evidence did not rise to the level of serious conditions and defects sufficient to sustain a rent escrow defense. But that is a separate question from whether Ms. Cane can raise a rent escrow defense at all. It may be that Ms. Cane ultimately would not prevail in her defense based on the available evidence. But the likelihood of the success of Ms. Cane's rent escrow defense is a different issue from whether she can raise that defense in a summary ejectment proceeding. As noted above, the allegation that there was a threat to shut off water service attributable to defects in the property would appear, on its face, to come within the statute. We leave the assessment of the strength of her rent escrow defense to the Circuit Court on remand.

*Whether the Judgment Already Included Recoupment*

The Association suggests that the Circuit Court already provided for a recoupment in its judgment when it limited the amount of its monetary judgment to the January rent and did not award anything for unpaid rent with respect to other months. However, in awarding the judgment, the Circuit Court did not state that it was applying a setoff or recoupment. Moreover, there was contradictory testimony about whether Ms. Cane had in fact paid for the other months. She testified that she had. Mr. Brown testified that she had not, but was contradicted at least in part by his property manager and his documents. In

light of this conflicting testimony, the Circuit Court may have reasonably concluded that it was not appropriate to try to resolve whether, and how much, rent was owed for other months when Mr. Brown raised this issue for the first time on the morning of trial.[18]

*Whether Ms. Cane was Ineligible to Raise the Defense*

Finally, the Association suggests that, regardless of the merits of her allegations, Ms. Cane should not have been permitted to raise a rent escrow defense because she had been subject to three prior judgments for unpaid rent within 12 months. *See* RP §8-211(k)(3). While Mr. Brown asserted at trial that there had been prior judgments, he did not submit any documentation. Nor did the Circuit Court take judicial notice of any prior judgments or make any findings to that effect.[19] Ms. Cane's appellate counsel concedes that there were prior judgments against her, but raises questions about their validity. We are unable to resolve this issue on appellate review.[20]

---

[18] The Circuit Court opined that, while EZ Rentals had made out "a pretty good case" that Ms. Cane owed additional rent, it would have to file another action with respect to other months.

[19] It is true that the Circuit Court foreclosed Ms. Cane's right of redemption, a ruling for which prior judgments are a prerequisite. However, it made no findings as to any prior judgments in connection with that ruling. The merits of that ruling are, as indicated earlier, now moot as a result of the foreclosure proceedings involving the property.

[20] A search of the online judiciary case search database did not yield any such prior judgments against Ms. Cane. Accordingly, we cannot take judicial notice of them.

*Summary*

The Circuit Court in this case was confronted with a self-represented landlord, who either exaggerated or did not know the amount of rent owed by the tenant, and a self-represented tenant, who admittedly paid late and who preferred to discuss defects in the property. In these challenging circumstances, the court may have understandably chosen to try to sort out varying and contradictory statements by Mr. Brown, his property manager, and Ms. Cane about what amount was actually unpaid for January 2015 and may have perceived Ms. Cane's various complaints about the property as leading down a rabbit hole from which the court would not soon emerge.

From our review of the transcript, the court appears to have been solicitous of the parties and asked appropriate questions to nail down the facts, as best it could, on the amount of rent Ms. Cane owed. The court, however, declined to consider evidence concerning defects in the property or to hear Ms. Cane's arguments for an "offset." The court based that decision on its apparent belief that the only issue in the summary ejectment proceeding was whether there was rent due and owing, and that any complaint about conditions on the property could only be raised in a separate affirmative rent escrow case.

That legal decision – on which we do not defer to the trial court – was mistaken. It may be that the defects that Ms. Cane was attempting to relate to the court would not have amounted to the serious and substantial defects that would support a rent escrow defense and that she would not have been entitled to abatement or reduction of the rent. But we

20

cannot know, because the Circuit Court would not permit her to testify to the defects or to submit evidence. Thus, we cannot say that the court's legal error did not prejudice her.

In light of the trial court's misunderstanding, we must vacate the judgment of the Circuit Court and remand the case for reconsideration in light of Ms. Cane's proffered rent escrow defense. *See* Maryland Rule 8-604(d). On remand, Ms. Cane may submit evidence of the alleged defects and conditions in her apartment. The trial court may then determine whether or not those conditions were sufficient to trigger the remedies available under the rent escrow statute.

## III

## Conclusion

For the reasons set forth above, we hold that under RP §8-211(i) a tenant may raise the existence of defects or conditions in a rental unit as an affirmative defense in a summary ejectment proceeding under RP §8-401. We express no view on how the Circuit Court, after having considered Ms. Cane's rent escrow defense, should rule.

**JUDGMENT OF THE CIRCUIT COURT FOR CALVERT COUNTY VACATED AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT.**

21