*Gary Wilson v. Tanglewood Venture, LP*, No. 20, September Term, 2025. Opinion by Gould, J.

**LANDLORD-TENANT ACTIONS – RENT ESCROW PAYMENTS – UNLICENSED PROPERTY – MOOTNESS DOCTRINE**

The issue before the Supreme Court of Maryland was whether, in a landlord-tenant action in which the rent escrow statute (MD. CODE ANN., REAL PROP. § 8-211 (2023)) was invoked, courts may require tenants to pay rent into escrow when the rental property lacks the license required by local law. The Supreme Court of Maryland dismissed the appeal after finding that no live controversy remained between the parties. By the time the appeal reached the Supreme Court, the tenants had relinquished possession of their rental units, and the landlord had obtained the license for the property and disclaimed any intent to collect rent attributable to the unlicensed period.

The Supreme Court of Maryland also found that there were no collateral consequences flowing from the dismissal of tenants' rent escrow actions that would prevent a finding of mootness. The record reflected that dismissal of the appeal would not expose the tenants to either liability for unpaid rent or other adverse consequences, as no judgment had been entered against them by either the district or circuit court.

**LANDLORD-TENANT ACTIONS – RENT ESCROW PAYMENTS – UNLICENSED PROPERTY – EXCEPTIONS TO THE MOOTNESS DOCTRINE**

The Supreme Court of Maryland held that the capable of repetition, yet evading review exception to the mootness doctrine did not apply to a rent escrow question where there was no live controversy because the tenants relinquished possession of their rental units. The Court also held that a rent escrow complaint would not evade appellate review.

**LANDLORD-TENANT ACTIONS – RENT ESCROW PAYMENTS – UNLICENSED PROPERTY – EXCEPTIONS TO THE MOOTNESS DOCTRINE**

The Supreme Court of Maryland held that the public interest exception did not apply to a rent escrow question where, during the pendency of this litigation, the General Assembly had substantially revised the rent escrow statute and altered landlord-tenant law in related respects. These statutory changes rendered the case an unsuitable vehicle for applying the public interest exception to the mootness doctrine.

Circuit Court for Prince George's County
Case No.: C-16-CV-24-002586
Argued: October 3, 2025

IN THE SUPREME COURT

OF MARYLAND

No. 20

September Term, 2025

_____

GARY WILSON

v.

TANGLEWOOD VENTURE, LP

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Opinion by Gould, J.
Watts, J., joins majority opinion with
explanation.
Fader, C.J., concurs.

_____

Filed: November 24, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The primary issue in this appeal is whether, in a landlord-tenant action in which the rent escrow statute (MD. CODE ANN., REAL PROP. ("RP") § 8-211 (2023)) is invoked, courts may require tenants to pay rent into escrow when the rental property lacks the license required by local law. Here, tenants of two rental units of an unlicensed residential property filed rent escrow complaints seeking repairs and the return of rent paid during the unlicensed period. The tenants argued that they should not be required to pay rent into escrow to secure the benefits of the rent escrow statute because under *Assanah-Carroll v. Law Offices of Edward J. Maher, P.C.*, 480 Md. 394 (2022), they owed no rent while the property was unlicensed. The District Court disagreed and ordered them to pay rent into escrow going forward. After the tenants declined, the District Court dismissed their rent escrow complaints.

The tenants appealed, but by the time the appeal reached this Court, both tenants had relinquished possession of their rental units, and the landlord had obtained the license for the property and disclaimed any intent to collect rent attributable to the unlicensed period.

For the following reasons, therefore, we dismiss the appeal as moot.

I

Respondent Tanglewood Venture, LP ("Landlord") owns the Park Tanglewood Apartments, a multi-family residential property located at 5309 Riverdale Road in Riverdale Park, Prince George's County. In January 2022, the Town of Riverdale Park declined to renew the property's rental license, due to various housing code violations.

Petitioners Gary Wilson and Vanessa Gross (together, "Tenants") rented and lived in separate units at the property. In July 2023, while the property was still unlicensed, Tenants—along with twenty other tenants—filed rent escrow complaints in the District Court of Maryland in Prince George's County.[1] The complaints alleged that the property posed threats to Tenants' life, health, and safety resulting from issues such as roaches, rodents, water damage, broken doors, inconsistent hot water, broken elevators, mold, water intrusions, collapsed ceilings, fire hazards, and lack of air conditioning. Tenants sought, among other things, a return of all rents paid during the unlicensed period and an order requiring Landlord to repair the conditions.

The first hearing on the complaints occurred on August 31, 2023. Landlord argued that Tenants could not invoke the rent escrow statute unless they paid into escrow all prior unpaid and future rent. Tenants countered that because Landlord lacked a rental license, it could not legally collect rent under this Court's decision in *Assanah-Carroll*, 480 Md. 394, and, therefore, they were not required to pay any money into escrow. The court ruled that Tenants did not need to pay rent accrued on or before August 2023 but had to begin paying rent into escrow in September 2023.

Tenants declined to comply with the court's order and paid no rent into escrow. In November 2023, the District Court dismissed their complaints for failure to fund the escrow accounts. Tenants timely appealed to the circuit court. Before the appeal was heard, Ms. Gross relinquished possession of her unit.

---

[1] Ms. Gross stopped paying rent in June 2023, and Mr. Wilson stopped paying rent in July 2023.

In the circuit court, Tenants argued that the District Court erred in ordering them to pay rent into escrow, given the property's unlicensed status. Tenants also argued that their appeal should be heard on the record because the amount in controversy exceeded $5,000. *See* MD. CODE ANN., CTS. & JUD. PROC. § 12-401(f) (2020). Landlord responded that the appeal should be heard de novo because the amount in controversy was less than $5,000. Landlord also changed its position and disclaimed any entitlement to rent for the unlicensed period. As a result, it argued that the appeal was moot. And, as noted above, Landlord regained the license for the property on August 7, 2024.

The circuit court determined that the appeal would be heard de novo. On March 20, 2025, the court dismissed the appeal as moot because Tenants had not placed any money into escrow and Landlord, which disclaimed any intention of seeking rent attributable to the unlicensed period, was not requesting that they do so. Thus, the court did not decide whether a tenant of an unlicensed unit must pay rent into escrow under the rent escrow statute. After the circuit court's dismissal, Mr. Wilson relinquished possession of his unit, effective May 31, 2025.

We granted Tenants' petition for certiorari. *Wilson v. Tanglewood Venture, LP*, 490 Md. 631 (2025). Tenants present three questions:

1. May a court, upon request of an unlicensed landlord, require a tenant to pay rent under the rent escrow law, Real Property Article § 8-211?

2. For purposes of determining whether an appeal should be heard on the record or de novo, how is the amount in controversy determined in an escrow matter when the parties' claims differ from the amount of rent ordered to be placed into escrow and the amount actually placed into escrow?

3. Is an appeal of a rent escrow matter moot if dangerous conditions continue unabated, the landlord agrees on appeal not to seek rent for the unlicensed period, or there are collateral consequences from the District Court's dismissal?

II

The threshold issue is whether, irrespective of the circuit court's mootness determination, this appeal is moot under the present circumstances. "[A] case is moot if no controversy exists between the parties or when the court can no longer fashion an effective remedy." *D.L. v. Sheppard Pratt Health Sys., Inc.*, 465 Md. 339, 351-52 (2019) (citation modified). "The test is whether 'past facts and occurrences have produced a situation in which, without any future action, any judgment or decree the court might enter would be without effect.'" *Cane v. EZ Rentals*, 450 Md. 597, 611 (2016) (quoting *Hayman v. St. Martin's Evangelical Lutheran Church*, 227 Md. 338, 343 (1962)). "Although there is no constitutional bar to this Court expressing its views on a moot issue, we rarely do so and usually dismiss the appeal without addressing the merits of the issue." *Powell v. Dept. of Health*, 455 Md. 520, 539-40 (2017) (citing *Mercy Hosp., Inc. v. Jackson*, 306 Md. 556, 562 (1986)).

A

Here, no live controversy remains between the parties. Ms. Gross vacated her apartment prior to the circuit court proceedings, and Mr. Wilson vacated his apartment in May 2025, after the circuit court dismissed Tenants' appeal. With Tenants having no possessory interest remaining in the property, there is no rent to abate, and Landlord presently owes Tenants no duty to fix the problems in their former units. Thus, whether a

4

court in a rent escrow action can order a tenant of an unlicensed rental unit to pay rent into escrow is a moot issue in this case.

Tenants contend that collateral consequences flowing from the dismissal of their rent escrow actions prevent a finding of mootness. "A case is not moot where it is apparent that a party may suffer collateral consequences from a trial court's judgment." *Cane*, 450 Md. at 611 (citation modified). And "only the possibility of collateral legal consequences is required" to defeat mootness. *Adkins v. State*, 324 Md. 641, 654 (1991) (citing *Pollard v. United States*, 352 U.S. 354, 358 (1957)).

Tenants argue that they may face "potential liability for past accruing rent" because Landlord sent notices to Mr. Wilson during the circuit court appeal seeking unpaid rent for the unlicensed period and filed Failure to Pay Rent actions against Ms. Gross after she moved out. We are not persuaded. *First*, Landlord's counsel represented to the circuit court that Landlord would not seek unpaid rent from Tenants attributable to the unlicensed period, and the circuit court relied on this representation in dismissing the appeal. *Second*, Landlord voluntarily dismissed the failure to pay actions it had filed against Ms. Gross after she moved out. Thus, we perceive no basis to find that the dismissal of this appeal would expose Tenants to liability for unpaid rent that Landlord has expressly disclaimed.

Relying on *Cane v. EZ Rentals*, 450 Md. at 611-12, Tenants also claim that "a decreased credit score" could have "a negative impact" on their ability to rent in the future. In *Cane*, we found collateral consequences sufficient to defeat mootness where the tenant challenged a judgment of possession and a monetary judgment entered against her. *Id.* at 612. There, such judgments could have affected the petitioner's credit score and ability to

rent in the future even after she vacated the premises. *Id.* Here, by contrast, the District Court dismissed Tenants' rent escrow complaints and did not enter a judgment of possession or a monetary judgment against them.

On this record, we find that the dismissal of a rent escrow complaint does not carry the same potential for collateral consequences as an adverse judgment of possession or monetary damages. The dismissal here did not establish that Tenants breached their lease obligations or that they owed any debt; it merely reflects that they declined to comply with the District Court's order to pay future rent into escrow. Although the possibility of collateral consequences need not be entirely free of speculation, *see Adkins*, 324 Md. at 654, the potential consequences suggested by Tenants are too attenuated to defeat mootness in these circumstances.

B

The next step in our analysis is to determine whether one of the limited exceptions to the mootness doctrine applies. Tenants invoke the capable of repetition yet evading review and public interest exceptions. In *Powell*, this Court explained that

> even if no controversy exists at the precise moment that the case is before the appellate court, it will not be deemed moot if the controversy between the parties is capable of repetition, yet evading review. This exception applies when (1) the challenged action was too short in its duration to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again. Even if it is unlikely that the same party will be subject to the same action, the exception may also apply if the issue is of public importance and affects an identifiable group for whom the complaining party is an appropriate surrogate (even if a class action is not certified).

*Powell*, 455 Md. at 540-41 (citation modified).

6

We are not persuaded that these exceptions apply. Tenants' appeal is moot because they relinquished possession of their units. The record offers no reasonable basis to expect that Tenants would be subject to the same action again, particularly from this Landlord, with whom they have no current legal relationship. Thus, the capable of repetition yet evading review exception is not applicable here.

We next consider the public interest exception. This exception applies "when '[t]he urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest[.]'" *Arrington v. Dep't of Human Res.*, 402 Md. 79, 91 (2007) (quoting *Lloyd v. Bd. of Supervisors of Elections*, 206 Md. 36, 43 (1954)). Tenants argue that we should resolve whether unlicensed landlords can compel tenants to pay rent into escrow because that issue affects many tenants and landlords. While it is undoubtedly true that this issue affects many tenants and landlords and is one of public importance, recent legislative changes made to landlord-tenant law counsel against reaching the merits on this record.

The interaction between local licensing requirements and statutory landlord-tenant remedies has been a recurring issue in Maryland. At common law, "a tenant's covenant to pay rent was independent of other covenants in the lease, absent an express agreement to the contrary[,]" even if dangerous conditions existed on the premises. *Velicky v. Copycat Bldg. LLC*, 476 Md. 435, 460 (2021) (citation omitted). The General Assembly, however, "has adopted a comprehensive statutory framework that regulates the landlord and tenant relationship." *Id*. at 451. One such provision is the rent escrow statute (RP § 8-211), which abrogated the common law by providing tenants with a mechanism to pay rent into the

court pending the landlord's completion of any necessary repairs. *Id.* at 460-61. The statutory scheme also includes mechanisms for a landlord to recover possession of the premises if the tenant fails to pay rent (RP § 8-401), fails to relinquish possession of the property at the conclusion of the tenancy (RP § 8-402), or otherwise breaches the lease (RP § 8-402.1).

Although Maryland has no statewide licensure regime for rental properties, many local governments impose licensing requirements with penalties for noncompliance. This Court has addressed the intersection of licensing requirements and landlord-tenant remedies on three occasions in recent years. In *McDaniel v. Baranowski*, applying common law principles, we held that a landlord cannot use the summary ejectment procedures of RP § 8-401 unless the property is licensed when the action is filed. 419 Md. 560, 585-87 (2011). In *Velicky v. Copycat Building LLC*, however, we declined to impose such a condition on a landlord's right to invoke the holdover statute (RP § 8-402). 476 Md. at 473-74, 482. Most recently, in *Assanah-Carroll v. Law Offices of Edward J. Maher, P.C.*, we extended *McDaniel* to bar unlicensed landlords from using the courts to recover unpaid rent, with an exception only "where the landlord can demonstrate that the wrongful actions of the tenant caused the licensing authority to suspend, revoke, or refuse to grant or renew the rental license." 480 Md. at 440.

Our decision in *Assanah-Carroll*, however, did not end the matter because, although this Court has the authority to interpret, apply, and even alter the common law, the General Assembly also has a say when it disagrees or otherwise wants to change the law. *Id.* at 429; *Johns Hopkins Hosp. v. Correia*, 405 Md. 509, 521 (2008). That's what happened here.

8

While this litigation proceeded through the district and circuit courts, the General Assembly twice revised the statutory framework governing landlord-tenant relations—making changes that bear directly on tenants' rights and landlords' remedies when the rental property is not duly licensed.

*First*, effective October 1, 2023, and in response to this Court's opinion in *Velicky*, the General Assembly enacted RP § 8-406—which broadly conditioned landlord repossession actions on compliance with local licensing requirements. H.B. 36, § 1, 2023 Gen. Assemb., Regular Sess. (Md. 2023) (codified at MD. CODE ANN., REAL PROP. § 8-406). Section 8-406 applies to actions for failure to pay rent (RP § 8-401), holdover (RP § 8-402), and breach of lease (RP § 8-402.1), with a narrow exemption for breach of contract actions involving imminent danger to persons or property. RP §§ 8-406(a)(2), 8-402.1(a)(1)(i)(2)(B). This statute requires landlords to plead with supporting facts that the property is either licensed, exempt from licensing, or unlicensed for one of three specified reasons: (1) wrongful acts of the tenant caused the license denial or revocation; (2) an administrative error by the licensing authority caused the denial or revocation; or (3) in multi-unit properties with a single license, the unit in question satisfies all safety and inspection requirements but the license cannot be obtained due to conditions affecting another unit. RP § 8-406(b)-(c).

*Second*, effective October 1, 2024, the Tenant Safety Act (the "Act") amended the rent escrow statute and codified the warranty of habitability. H.B. 1117, § 1, 2024 Gen. Assemb., Regular Sess. (Md. 2024). Among other things, the revised rent escrow statute creates three rebuttable presumptions: (1) tenants are entitled to adjudication of requests

for rent abatement; (2) tenants are entitled to abatement of prospective rent in an amount determined by the court, "without prejudice to a final disposition of rent that is due and unpaid to the landlord"; and (3) court orders requiring rent escrow are limited to rent due and unpaid after the order. RP § 8-211(i)(1)-(3). The Act also permits parties to request adjustments to escrow amounts at any time. *Id*. § 8-211(i)(4).

In addition, the Act codified the warranty of habitability by adding RP § 8-212, providing that a residential landlord offering property for rent "warrant that the dwelling unit is fit for human habitation" throughout the tenancy. RP § 8-212(c), (d). Tenants may enforce this warranty affirmatively, through a private right of action for damages and rent abatement, *id.* § 8-212(g)(1)(i), or defensively, by refusing to pay rent and raising breach of warranty as a defense in any landlord action to recover rent or possession, *id.* § 8-212(g)(1)(ii).

Because of these statutory changes, this case is not suitable for applying the public interest exception. Both RP § 8-406 and the Act became law during the pendency of this litigation, and through these enactments, the General Assembly recalibrated the rights and obligations of residential landlords and tenants. The effect of these changes on a tenant's rights under RP § 8-211 was not briefed or argued in the district and circuit courts; thus, addressing the merits here would provide guidance for a legal framework that no longer exists while offering uncertain direction for cases arising under current law. Accordingly, we decline to address the merits of this moot controversy.

**APPEAL DISMISSED. FIFTY PERCENT OF THE COSTS TO BE BORNE BY PETITIONERS AND FIFTY PERCENT OF**

10

**THE COSTS TO BE BORNE BY RESPONDENT.**

Justice Watts joins the majority opinion and writes separately as follows.

Respectfully, I join the majority opinion. I write separately to state with clarity that when the General Assembly enacted Md. Code Ann., Real Prop. ("RP") § 8-406, which became effective October 1, 2023, and provides that, in a county, municipality, or any other jurisdiction that requires a license for the lawful operation of residential rental property, a landlord must be licensed to make use of the summary proceedings set forth in RP § 8-401, RP § 8-402, and RP § 8-402.1, it essentially overruled this Court's holding in Velicky v. Copycat Bldg. LLC, 476 Md. 435, 264 A.3d 661 (2021).

Under RP § 8-406(b) and (c), a landlord who files a complaint to repossess property under the tenant holding over statute, RP § 8-402, and other summary ejectment statutes, must demonstrate by a preponderance of evidence that the property at issue is either licensed in compliance with applicable local licensing requirements, exempt from those requirements, or not licensed in compliance with the requirements due to a circumstance set forth in subsection (c)(1)(iii),(iv), or (v)—*i.e.*, a wrongful act of the tenant "caused the licensing authority to suspend, revoke, or refuse to grant or renew the license[,]" "an administrative error or omission by the licensing authority caused the licensing authority to suspend, revoke, or refuse to grant the rental license[,]" or the unit would satisfy licensing requirements, but is "[p]art of a multi-unit property" subject to a single license that is not properly licensed "because of a condition affecting another unit in the multi-unit property[.]"

Accordingly, this Court's holding in Velicky, that a landlord has a "right to invoke the holdover statute (RP § 8-402)[,]" without having a license to operate a property, Maj.

Slip Op. at 8, is no longer good law.

Circuit Court for Prince George's County
Case No.: C-16-CV-24-002586
Argued: October 3, 2025

IN THE SUPREME COURT

OF MARYLAND

No. 20

September Term, 2025

_____

GARY WILSON

v.

TANGLEWOOD VENTURE, LP

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Concurring Opinion by Fader, C.J.

_____

Filed: November 24, 2025

I fully concur with the Majority opinion.  I write separately to make one additional point about a possible tension in the law that the General Assembly may want to address.

In *Assanah-Carroll v. Law Offices of Edward J. Maher*, *P.C.*, this Court held "that where a municipality or county enacts a rental license law, which conditions the performance of a residential lease upon the issuance of a rental license, a landlord may not file an action against a tenant to recover unpaid rent that is attributable to the period when the property was not licensed."  480 Md. 394, 401 (2022).  As the Majority points out, the only exception we recognized to that rule in *Assanah-Carroll* was "where the landlord can demonstrate that the wrongful actions of the tenant caused the licensing authority to suspend, revoke, or refuse to grant or renew the rental license."  Slip op. at 8-9 (quoting *Assanah-Carroll*, 480 Md. at 440).

The following year, the General Assembly enacted § 8-406 of the Real Property Article.  Md. Code Ann., Real Prop. § 8-406 (2023 Repl.).  That section allows unlicensed landlords who are not exempt from licensing requirements to pursue, among other things, summary ejectment of tenants through failure-to-pay-rent actions under Real Property § 8-401 in three circumstances:  (1) when wrongful acts of the tenant "caused the licensing authority to suspend, revoke, or refuse to grant or renew the license;" (2) when "an administrative error or omission by the licensing authority caused the licensing authority to suspend, revoke, or refuse to grant or renew the rental license;" or (3) when the unit at issue would satisfy licensing requirements, but is "[p]art of a multi-unit property" subject to a single license that is not properly licensed "because of a condition affecting another unit in the multi-unit property[.]" *Id.* § 8-406(c).  The first of these exceptions is effectively

the same as the exception identified in *Assanah-Carroll*. The second and third are different.

When a landlord is unlicensed due to an administrative error by the licensing authority or because of conditions in a different unit of a multi-unit property, there is arguably a tension between (1) the common law rule adopted in *Assanah-Carroll*, prohibiting the use of the courts to collect unpaid rent attributable to a period in which the landlord was unlicensed, and (2) the statutory rule in § 8-406, allowing a landlord to use a failure-to-pay-rent action to summarily eject the tenant. The General Assembly may wish to address that tension through legislation.